(No. 60754.—

WALTER NEWKIRK *et al.*, Appellants, v. JOSEPH G. BIGARD *et al.*, Appellees.

*Opinion filed September 20, 1985.—Rehearing denied December 2, 1985.*

Richard Briles Moriarty, of Effingham, for appellants.

Lawrence Eaton, of Eaton, Eaton & Tomaw, of Newton, for appellee Joseph G. Bigard *et al.*

Neil F. Hartigan, of Springfield (Jill Wine-Banks, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellee Brad Evilsizer.

JUSTICE RYAN delivered the opinion of the court:

Plaintiffs, Walter and June Fay Newkirk, filed a declaratory judgment action in the circuit court of Jasper County requesting the court to declare an order of the State mining board void *ab initio* in its entirety. Plaintiffs' complaint also requested that title to the mineral estate be quieted in plaintiffs. The circuit court granted the defendants' motion to dismiss the action. The appellate court reversed the circuit court's decision but held the order invalid only in part. (125 Ill. App. 3d 454.) Plaintiffs' petition for leave to appeal to this court was granted pursuant to our Rule 315(a) (94 Ill. 2d R. 315(a)).

The order at issue in this case involves a 40-acre tract of land in Jasper County. The land was originally owned by defendants Paul and Mildred Lucas and Cora Lucas. On May 4, 1961, the Lucases conveyed the north 30 acres of the tract to the plaintiff Walter Newkirk, reserving one-half of the mineral interests for 20 years and for as long thereafter as oil and gas and other minerals were produced from operations commenced during the 20-year period. Paul and Mildred Lucas later acquired Cora Lucas' interest in the property.

As the end of the 20-year period drew near, Walter Newkirk refused the Lucases requests to enter into an oil and gas lease. On November 13, 1980, the Lucases unilaterally leased their mineral interests to defendant

Joseph Bigard. The Lucases and Bigard then petitioned the mining board to integrate all the interests in the tract so that drilling operations could be commenced in accordance with "An Act in relation to oil, gas, coal and other underground resources ***." (See Ill. Rev. Stat. 1979, ch. 96½, par. 5436.) The petition contained the information required by statute and requested the board to provide one or more equitable alternatives whereby the plaintiff Walter Newkirk could surrender his interest for reasonable compensation if he elected not to participate in the cost and risk of the drilling and operation of the unit. See Ill. Rev. Stat. 1979, ch. 96½, par. 5436(d).

A hearing on the petition was held on December 1, 1980. Newkirk was given advance notice of the hearing, and his presence was requested. Newkirk did not attend the hearing, nor did he appear through counsel. On December 11, 1980, the mining board issued an order integrating the interests and permitting Bigard to commence drilling operations. The order also stated that Newkirk would participate in the costs and risks of the drilling units and set out the participation factors. Bigard commenced drilling operations on January 11, 1980, and began selling fractional interests. The first oil produced from these operations was sold on April 30, 1981.

Approximately two years after the commencement of the drilling, the plaintiffs, Newkirk and his wife, filed the present declaratory judgment action attacking the mining board's jurisdiction to issue the order. Plaintiffs allege that the mining board was without jurisdiction to issue the order because the order failed to include certain provisions required by statute. The integration statute provides in part:

"[E]ach such integration order *shall* *** prescribe the time and manner in which all the owners in the drilling unit may elect to participate therein; and make provision

for the payment by all those who elect to participate therein of the reasonable actual cost thereof, plus a reasonable charge for supervision and interest. If requested, each such integration order *shall* further provide for one or more just and equitable alternatives whereby an owner who does not elect to participate in the risk and cost of the drilling and operation, or operation, of a well may elect to surrender his leasehold interest to the participating owners on some reasonable basis and for a reasonable consideration \*\*\*." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 96½, par. 5436(d).)

The order at issue in the present case failed to state the time and manner in which Newkirk could elect to participate in the unit and did not provide, as requested by the defendants, one or more equitable alternatives if Newkirk elected not to participate in the risk and cost of the drilling and operations.

The integration statute unequivocally states that each order "shall" include the election provisions and "shall," if requested, include the equitable alternatives. Generally, the use of the word "shall" in a statute indicates a mandatory obligation, unless the context indicates otherwise. (*People v. Richardson* (1984), 104 Ill. 2d 8, 15; *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 21.) Furthermore, the word "shall" will not be given a permissive meaning where it is used with reference to any right or benefit to anyone, and the right and benefit depends upon giving a mandatory meaning to the word. (*Andrews v. Foxworthy* (1978) 71 Ill. 2d 13, 21.) The integration statute gives the mining board the power to require an unwilling interest owner to integrate his interest into a drilling unit. (See Ill. Rev. Stat. 1979, ch. 96½, par. 5436(a).) The word "shall" is used in the integration statute in reference to the right of the unwilling interest owner to choose whether or not he wishes to participate in the costs and risks of the drilling and operation of the unit. The word "shall" is also used in reference to the right of

the unwilling owner to choose an equitable alternative whereby he can surrender his interest for just compensation if he does not wish to participate in the costs and risks of the drilling and operation. The statute does not require that the unwilling interest owner request the equitable alternatives; the equitable alternatives may be requested in the petition for the order, whomever the petitioner may be. (Ill. Rev. Stat. 1979, ch. 96½, par. 5436(d).) The unwilling interest holder's right to choose between the options concerning participation in the costs and risks of the drilling and operation of the unit is dependent upon the term "shall" being given a mandatory meaning. The mining board's order in the present case is defective because it does not give the plaintiff Walter Newkirk the option of not participating in the costs and risks and does not give him an equitable alternative whereby he could surrender his interest for just compensation in lieu of participating in the costs and risks. The fact that the order is defective, however, does not mean that the mining board was without jurisdiction to issue the order.

It should be noted that some confusion has existed over whether this is a declaratory judgment action or an action for judicial review brought pursuant to the provisions of the mining act. (Ill. Rev. Stat. 1979, ch. 96½, par. 5416.) The appellate court treated the action as one brought pursuant to the judicial review section of the statute. (125 Ill. App. 3d 454, 459.) The complaint, however, was filed as a declaratory judgment action. The record shows that the plaintiffs have vigorously contended that this is not a judicial review action under the statute but is a declaratory judgment action attacking the entire order of the mining board as being void *ab initio*.

Plaintiffs are seeking to have the entire order declared void *ab initio* through a declaratory judgment

action, so as to breath life into their quiet title action. Plaintiffs request the court to declare them sole owners of the mineral estate underlying the north 30 acres of the tract. Plaintiffs contend that if the entire order is void *ab initio* then the drilling permits issued pursuant to the order are also void and thus the operations commenced on the tract were done illegally. Plaintiffs argue that the provision of the deed extending the Lucases' reservation of one-half of the mineral estate beyond the 20-year primary term for "as long as oil, gas or other minerals are produced from operations commenced within said 20-year period" means operations legally commenced during that period. Thus the basis of plaintiffs' quiet title action is that the extension clause in the deed requires commencement of *de jure* rather than merely *de facto* operations during the primary term. Our purpose in explaining plaintiffs' theory is not to rule on its validity but merely to point out why the plaintiffs have chosen to attack the validity of the entire order by challenging the jurisdiction of the mining board instead of merely bringing an action for judicial review of the order pursuant to the statute. See Ill. Rev. Stat. 1979, ch. 96½, par. 5416.

The general rule is that a party must exhaust its administrative review remedies, including statutory *certiorari*, before seeking equitable relief. (*Graham v. Illinois Racing Board* (1979), 76 Ill. 2d 566, 573; *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 357-59.) An exception to the general rule exists, however, where the agency rule or order is being challenged on its face as not being authorized by statute. (*Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 550-51; *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 548.) The plaintiffs allege that the mining board's order was not authorized by statute. This is a proper issue to be determined by a declaratory judgment action

rather than as an action for judicial review.

Plaintiffs allege that the order was not authorized by statute because it did not contain the election provisions and equitable alternatives. While we agree that the failure to include these provisions left the order subject to challenge in some other proceeding, we do not agree that the mining board was without authority to have issued the order.

The term "jurisdiction," while not strictly applicable to an administrative body, may be employed to designate the authority of the administrative body to act, and as such, the issue is governed by analogy to the rules which are applicable to the courts. (*Pocahontas Mining Co. v. Industrial Com.* (1922), 301 Ill. 462, 474; *People ex rel. Petersen v. Turner Co.* (1976), 37 Ill. App. 3d 450, 461 n.3; *Beam v. Erven* (1971), 133 Ill. App. 2d 193, 196. See *Chicago v. Fair Employment Practices Com.* (1976), 65 Ill. 2d 108, 112.) In *Chicago v. Fair Employment Practices Com.* this court analogized an administrative agency to a court of limited jurisdiction and found that the same rules concerning jurisdiction and validity of orders were applicable. The court held that an agency order would be declared void if the agency lacked jurisdiction of the parties or of the subject matter, or lacked the inherent power to make or enter the particular order involved. *Chicago v. Fair Employment Practices Com.* (1976), 65 Ill. 2d 108, 112.

The mining board had personal jurisdiction over Newkirk. He was served with advance notice of the hearing, and his presence was requested. The mining board also had subject matter jurisdiction. Subject matter jurisdiction is the power to hear and determine causes of the general class of cases to which the particular case belongs. *United Biscuit Co. of America v. Voss Truck Lines, Inc.* (1950), 407 Ill. 488, 499; *Taylor Coal Co. v. Industrial Com.* (1922), 301 Ill. 381, 384.) The

"subject matter jurisdiction" granted to the mining board by the integration statute is the power to integrate the interests of unwilling owners into a drilling unit, which constitutes the general class of cases alluded to above. The mining board's order in the present case falls within this general class of cases, as it integrated the plaintiffs' interests into a drilling unit. Thus, the mining board had subject matter jurisdiction.

The mining board also had inherent authority to issue the order. The mining board, being a statutory creation, must find its authority within the statute. (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 551; *City of Chicago v. Fair Employment Practices Com.* (1976), 65 Ill. 2d 108, 112-13.) The integration statute provides that in cases "[w]here *** owners have not agreed to integrate their interests *** the Mining Board shall, for the prevention of waste or to avoid the drilling of unnecessary wells, require such owners to do so and to develop their lands as a drilling unit, before issuing a permit for the drilling thereon." (Ill. Rev. Stat. 1979, ch. 96½, par. 5436.) The integration statute also gives the mining board the authority to set participation factors and to make provisions for the payment of reasonable actual costs. (See Ill. Rev. Stat. 1979, ch. 96½, par. 5436(d).) Thus the mining board's order, on its face, was authorized by statute and not subject to collateral attack. See *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 550-51; *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 548.

Plaintiffs contend that the mining board was without authority to issue any order which did not contain the election provisions. We disagree. The mining board had personal jurisdiction, subject matter jurisdiction, and the inherent authority to issue the order. An agency's jurisdiction or authority is not lost merely because its order may be erroneous. *Illini Coach Co. v. Illinois Commerce*

*Com.* (1951), 408 Ill. 104, 109.

In *Illini Coach Co. v. Illinois Commerce Com.* the petitioner sought to have certain orders of the Commerce Commission set aside as being void. The petitioner alleged that the Commission, contrary to its statutory limitation, issued the orders without having received or read the transcript of evidence taken by the examiners and without hearing argument or receiving briefs of the parties. The court noted that the Commission had jurisdiction of the parties and the subject matter. The court found that the failure of the Commission to review the transcripts or hear arguments rendered the order voidable, not void, and thus the orders were not subject to collateral attack. *Illini Coach Co. v. Illinois Commerce Com.* (1951), 408 Ill. 104, 110.

In *Beam v. Erven* (1971), 133 Ill. App. 2d 193, the appellate court ruled that an order of a zoning commission was merely voidable, not void, and thus not subject to collateral attack. The petitioner in *Beam* was attempting to have a zoning board order granting a variation set aside as being void. The zoning ordinance allowed the zoning board to grant variances from the zoning regulations "in the following instances, and in no others:

\*\*\*

(2) to permit the use of a lot for a use otherwise prohibited solely because of insufficient area of the lot, but in no event shall the area of the lot be less than 90 per cent of the required lot area." (*Beam v. Erven* (1971), 133 Ill. App. 2d 193, 197.)

The zoning board entered an order granting a variance where the lot was less than 90% of the required area. The appellate court, though using somewhat different reasoning, held that the fact that the zoning board erred in issuing the order did not deprive the zoning board of its authority to issue the variance but rather made the order voidable through a proper review proceeding. The

appellate court noted that the zoning board had personal and subject matter jurisdiction and the authority to grant variances. The court held that the granting of a variance of less than 90%, while rendering the order voidable, did not divest the zoning board of its jurisdiction.

Again, the general rule is that a party cannot collaterally attack an agency order in a proceeding such as this unless the order is void on its face as being unauthorized by statute. (*Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 550-51; *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 548.) To accept plaintiffs' argument that the failure to include the omitted provisions rendered the order void would allow the exception to swallow up the rule. Plaintiffs' argument would allow a collateral attack on an order whenever the agency has failed to follow the exact letter of a statutory provision. A party could merely point to any provision of a statute which was not complied with and claim that the agency did not have authority to act unless the provision was complied with. Thus in *Illini Coach Co. v. Illinois Commerce Com.* the plaintiff could have merely claimed that the Commission had no authority to act unless it reviewed the transcript and heard arguments. To accept plaintiffs' argument would be to disregard the distinction between agency orders which are void and subject to collateral attack, and those which are merely voidable and subject to attack only through the applicable administrative and judicial review proceedings. We decline to adopt such a rule. It may be that plaintiffs, on judicial review under the statute or in some other proceeding, could challenge certain aspects of the order such as that part of the order which made Newkirk responsible for certain costs because of procedural irregularities. However, that issue was never raised. Plaintiffs' contention has been that the entire or-

der is void.

The mining board's failure to include the omitted provisions did not render the order void; it merely made the order voidable. The order, on its face, was authorized by statute and thus not subject to collateral attack by means of a declaratory judgment action. Thus, the circuit court did not error in dismissing plaintiffs' declaratory judgment action.

Plaintiffs' brief cites numerous decisions concerning Commerce Commission orders wherein the courts have stated that the partial invalidity of an order will render the entire order invalid. (See *Illinois Commerce Com. v. New York Central R.R. Co.* (1947), 398 Ill. 11, 19; *Brotherhood of Railroad Trainmen v. Terminal Railroad Association* (1942), 379 Ill. 403, 407; *Brotherhood of Railroad Trainmen v. Elgin, Joliet & Eastern Ry. Co.* (1940), 374 Ill. 60, 62-65.) The cases cited by plaintiffs are inapplicable because they deal with statutory *certiorari* under the Public Utilities Act, wherein the power of the courts to review the orders is limited by statute and the court had no authority to declare an order only partially invalid. (Ill. Rev. Stat. 1979, ch. 111²/₃, par. 72.) The present action was brought as a declaratory judgment action, and as noted above, the issue is not whether the order was correct but whether the agency had the authority to enter the order.

Finally, we wish to note again that our decision in this matter does not involve the application of the judicial review provisions of the mining act (Ill. Rev. Stat. 1979, ch. 96½, par. 5416). The plaintiffs brought this action as a declaratory judgment action attacking the jurisdiction of the mining board to have issued the order, and we have treated it as such. Thus we express no opinion as to whether the failure to include the omitted provisions rendered the entire order or merely a portion of it voidable.

For the reasons stated herein the decision of the appellate court is reversed in part and affirmed in part, and the decision of the circuit court of Jasper County is affirmed.

*Appellate court affirmed in part and reversed in part; circuit court affirmed.*