LILLIAN BURNELL BERLAK, as Ex'x of the Estate of Pauline Haas, Deceased, Plaintiff-Appellee and Cross-Appellant, v. VILLA SCALABRINI HOME FOR THE AGED, INC., *et al.*, Defendants-Appellants and Cross-Appellees.

First District (5th Division)   No. 1—94—2058

Opinion filed September 20, 1996.—Rehearing denied October 30, 1996.

Robert C. Yelton III and Michael G. Patrizio, both of Dowd & Dowd, Ltd., of Chicago, for appellants.

Sweeney & Riman, Ltd., of Chicago (Michele J. Braun-Pritzker and Eric Brodie, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

Lillian Burnell Berlak, on behalf of her deceased mother, Pauline

Haas, brought the instant action alleging negligence and violation of the Nursing Home Care Reform Act of 1979 (the Nursing Home Care Reform Act) (Ill. Rev. Stat. 1985, ch. 111$^{1}$/2, par. 4151—101 et seq. (now 210 ILCS 45/1—101 et seq. (West 1994))) to recover for the personal injuries sustained by Haas on June 15, 1986, while she was a resident at Villa Scalabrini Home for the Aged. Named as defendants were Villa Scalabrini Home for the Aged, Inc. (Villa Scalabrini), the nursing home; Father Lawrence Cozzi, the administrator of Villa Scalabrini; Margaret Becker, the director of nurses at Villa Scalabrini; and the Catholic Bishop of Chicago, a corporation sole, the owner of the premises. At trial, at the conclusion of the plaintiff's case, a directed verdict was granted in favor of the Catholic Bishop of Chicago but denied as to the remaining defendants. At the close of all the evidence, the trial court denied defendants' renewed motion for directed verdict as well as plaintiff's motion for directed verdict on the issue of the decedent's negligence. The jury returned a general verdict in favor of defendants Cozzi and Becker as against the plaintiff and in favor of the plaintiff as against Villa Scalabrini. The jury also determined the decedent's damages to be $7,478.96, the amount of her medical bills, but reduced that amount by 50% based upon a finding that the decedent was negligent. Thereafter, pursuant to plaintiff's motion, the trial court found that Villa Scalabrini violated the Nursing Home Care Reform Act of 1979 and awarded treble damages of $11,218.44 (trebling "recoverable damages" rather than "actual damages") and attorney fees and costs totalling $85,000.

On appeal, the defendants argue that the trial court erred in denying their motions for directed verdict; in denying their motion in limine and allowing plaintiff's witness to give an opinion on the ultimate issue in the case; in allowing plaintiff's witness to testify as an expert in violation of Supreme Court Rule 191 (134 Ill. 2d R. 191); in ruling that the general verdict of the jury implied a finding that the Nursing Home Care Reform Act had been violated; and in awarding attorney fees and costs totalling $85,000. In her cross-appeal, the plaintiff argues that the trial court erred in granting a directed verdict to the Catholic Bishop of Chicago; in denying plaintiff's motion for judgment notwithstanding the verdict as to defendants Cozzi and Becker; in denying plaintiff's motion for directed verdict on the issue of comparative negligence; in denying plaintiff's post-trial motion for a new trial on the issue of damages only; in trebling the amount of Haas' "recoverable damages" (actual damages reduced by the amount of Haas' negligence); and in failing to award all attorney

fees and costs sought in plaintiff's petition and supplemental petition.[1]

## VII. Attorney Fees

■ As its final argument on appeal, Villa Scalabrini contends that the award for attorney fees and costs in the amount of $85,000 was improper because the plaintiff recovered only nominal damages; because the award did not bear a reasonable relationship to the litigation's success; and because the award ignored the terms of a contingency fee agreement that may have existed between the plaintiff and her attorneys.[2]

Section 3—602 of the Nursing Home Care Reform Act provides:

> "The licensee shall pay 3 times the actual damages, or $500, whichever is greater, and costs and attorney's fees to a facility resident whose rights *** are violated." Ill. Rev. Stat. 1985, ch. 111¹/₂, par. 4153—602 (now 210 ILCS 45/3—602 (West 1992)).

The requirement that the licensee pay the prevailing resident's attorney fees is mandatory as evidenced by the legislature's use of the word "shall" in the statute. Ordinarily, the use of the word "shall" in a statute is indicative of a mandatory legislative intent. *E.g., Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 566 N.E.2d 1283 (1990); *Newirk v. Bigard*, 109 Ill. 2d 28, 485 N.E.2d 321 (1985). The word "shall" will not be given a permissive meaning where it is used with reference to any right or benefit to anyone to the extent such right or benefit depends upon giving a mandatory meaning to the word. *Newirk v. Bigard*, 109 Ill. 2d 28, 485 N.E.2d 321; *Moon Lake*

---

[1] In order to comply with appellate court page limitations specified by revised Supreme Court Rule 23 (166 Ill. 2d R. 23), the publishable portion of this opinion is limited to the attorney fees issues raised in defendants' appeal and plaintiff's cross-appeal. For a full and detailed discussion of all other issues, including the nonpublishable Rule 23 material, see *Berlak v. Villa Scalabrini Home for the Aged, Inc.*, Docket No. 1—94—2058.

[2] The plaintiff argues that Villa Scalabrini waived this issue on appeal because it failed to introduce evidence or otherwise defeat the evidence presented in support of the petition for fees. See, *e.g., Downes Swimming Pool, Inc. v. North Shore National Bank*, 124 Ill. App. 3d 457, 464 N.E.2d 761 (1984). We disagree. This contention misapprehends the nature of Villa Scalabrini's arguments. Villa Scalabrini is not contesting any specific charge included within the fee petition but, rather, is contesting plaintiff's overall entitlement to fees due to the amount of damages recovered and due to her attorneys' fee agreement. Those arguments were raised in the court below, and, as such, were not waived.

*Convalescent Center v. Margolis*, 180 Ill. App. 3d 245, 535 N.E.2d 956 (1989).

■ The statutory award of attorney fees is designed to encourage nursing home residents to seek legal redress against nursing homes for violations of their rights. As the Illinois Supreme Court stated in *Harris v. Manor Healthcare Corp.*, when discussing the constitutionality of the treble damages provision of the Act:

> "[W]ithout the possibility of recovering treble damages and attorney fees, many residents would likely forgo suing a licensee for violations of the Act. The legislature could reasonably assume that residents, either because of their advanced age, mental or physical infirmities or lack of financial resources are often unlikely to pursue costly and time-consuming litigation in the hope of receiving an uncertain or small recovery. *** Moreover, many violations of the Act will yield little in the way of actual monetary damages. *** Providing for the recovery of treble damages has the presumed effect of encouraging private enforcement as well as encouraging compliance with the Act." *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 369-70, 489 N.E.2d 1374, 1382-83 (1986).

The recovery of attorney fees by a resident who prevails in a private right of action against the licensee is even more necessary than the recovery of treble damages in order for a resident to pursue litigation under the Nursing Home Care Reform Act. Without that recovery, it is unlikely that attorneys would be adequately remunerated for their successful efforts.

■ Villa Scalabrini argues that even though the plaintiff proved a violation of the Nursing Home Care Reform Act, she should not have been awarded attorney fees because her damages were nominal. As there is no case law on the issue of attorney fee awards under the Nursing Home Care Reform Act, Villa Scalabrini relies on federal case law concerning the Civil Rights Attorney's Fees Award Act of 1976 (42 U.S.C. § 1988 (1994)). Villa Scalabrini cites two cases, *Farrar v. Hobby*, 506 U.S. 103, 121 L. Ed. 2d 494, 113 S. Ct. 566 (1992), and *Willis v. City of Chicago*, 999 F.2d 284 (7th Cir. 1993), wherein the courts ruled that although the petitioners were prevailing parties, because they were awarded nominal damages in the amount of $1, they were not entitled to attorney fees because their litigation accomplished little beyond giving them moral satisfaction that their rights were violated. According to those courts, when a petitioner is awarded nominal damages, that petitioner has failed to prove actual, compensable injury, an essential element of the claim for monetary relief, and, as a result, is entitled to no fee.

These federal civil rights cases are factually distinguishable from the instant case, however. Unlike the petitioners in *Farrar* and *Willis*, the plaintiff in the instant case was not awarded nominal damages. She proved actual injury and was awarded compensable damages for those injuries. Thus, even under the reasoning of *Farrar* and *Willis*, the plaintiff would not have been precluded from recovering attorney fees since she obtained more than a mere moral victory.

■ The defendant next argues that the attorney fee award in the instant case was erroneous because it did not bear some reasonable relationship to the damages awarded or to plaintiff's success in proving all counts of her complaint. In support of this contention, the defendant cites to two additional federal civil rights cases, *Lenard v. Argento*, 699 F.2d 874 (7th Cir. 1983), and *Skoda v. Fontani*, 519 F. Supp. 309 (N.D. Ill. 1981). Neither of these cases is current law. *Skoda* was implicitly overruled by *Farrar v. Hobby* and *Willis v. City of Chicago*;[3] and on remand and appeal, the seventh circuit acknowledged in *Lenard v. Argento*, 808 F.2d 1242 (7th Cir. 1987), that the "claim-chopping" approach suggested in its earlier *Lenard* decision had since been rejected by the United States Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983), a case that will be discussed below.

The legislative intent behind section 3—602 of the Nursing Home Care Reform Act suggests that attorney fees should be awarded whenever a violation of the Act is proved even if the monetary recovery is minimal. As discussed above, our supreme court in *Harris v. Manor Healthcare Corp.* acknowledged that many violations of the Act would "yield little in the way of actual monetary damages" (111 Ill. 2d at 369, 489 N.E.2d at 1383) such that, in the absence of the possibility of being awarded attorney fees and treble damages, residents would likely forgo suing licensees for violations of the Act. Since the purpose of the Act was to make nursing home residents " 'private attorney general[s]' " (111 Ill. 2d at 369, 489 N.E.2d at 1382), awarding attorney fees in direct proportion to the amount of damages recovered

---

[3]In *Skoda v. Fontani*, 519 F. Supp. 309 (N.D. Ill. 1981), in earlier proceedings, the plaintiff was awarded nominal damages of $1, and the district court denied the petition for attorney fees. The circuit court reversed the order denying attorney fees, and on remand the district court reluctantly awarded fees totalling $6,086 on a petition seeking $10,441. As discussed earlier in this order, under *Farrar v. Hobby*, 506 U.S. 103, 121 L. Ed. 2d 494, 113 S. Ct. 566 (1992), and *Willis v. City of Chicago*, 999 F.2d 284 (7th Cir. 1993), attorney fees will no longer be awarded to a prevailing plaintiff who is awarded nominal damages of $1.

would discourage private enforcement of the Act and thus defeat that purpose.

Moreover, even in civil rights cases, the award of attorney fees is not dependent upon a petitioner's recovery of substantial monetary damages. As the United States Supreme Court stated in *City of Riverside v. Rivera*, 477 U.S. 561, 575-76, 91 L. Ed. 2d 466, 480-81, 106 S. Ct. 2686, 2695 (1986) (opinion of Brennan, J., joined by Marshall, Blackmun, and Stevens, JJ.):

> "Congress did not intend for fees in civil rights cases *** to depend on obtaining substantial monetary relief. *** Thus, Congress recognized that reasonable attorney's fees under § 1988 are not conditioned upon and need not be proportionate to an award of money damages. ***
>
> A rule that limits attorney's fees in civil rights cases to a proportion of the damages awarded would seriously undermine Congress' purpose in enacting § 1988."

Federal civil rights case law does provide, however, that if the plaintiff fails to prevail on all claims presented, the hours spent on unsuccessful claims may be excluded in considering the amount of reasonable attorney fees. *Hensley v. Eckerhart*, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933. In such a situation, the court must consider whether the unsuccessful claims were related to the successful claims and whether the plaintiff achieved a level of success making it appropriate to award attorney fees for hours reasonably expended on the unsuccessful claims as well. See *Hensley*, 461 U.S. at 435, 76 L. Ed. 2d at 51-52, 103 S. Ct. at 1940, stating:

> "In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discreet claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."

See also *City of Riverside v. Rivera*, 477 U.S. 561, 91 L. Ed. 2d 466, 106 S. Ct. 2686; *Lenard v. Argento*, 808 F.2d at 1246 (if the lawyer "presents a congeries of theories, each legally and factually plausible, he is not to be penalized just because some, or even all but one, are rejected, provided that the one or ones that succeed give him all that he reasonably could have asked for").

Under this analysis, the plaintiff's attorney fees in the instant case should not have been reduced solely because she prevailed on

only one count of her four-count complaint.[4] As the trial court found, all four counts involved a common core of facts, the circumstances surrounding Haas' injury, and similar theories of liability, negligence and statutory and regulatory violations. Each count was different primarily due to the fact that it named a different defendant and alleged variances as to their alleged responsibilities and conduct. Since the claims were related and since the plaintiff was awarded compensatory damages, no reduction of attorney fees was required due to her failure to recover on the remaining three counts of her complaint.

Notwithstanding the interrelatedness of plaintiff's successful and unsuccessful claims, we note that the plaintiff sought additional damages for pain and suffering and disability.[5] Since the jury did not award damages for those alleged losses and since the damages awarded were reduced because of Haas' negligence, defendants argue that the plaintiff did not obtain a significant portion of the relief she sought. However, the amount of monetary recovery is but a single factor to consider in determining the success of plaintiff's action. The accrual of a public benefit that is not reflected in the monetary damage award also must be considered. See *City of Riverside*, 477 U.S. at 571-72, 91 L. Ed. 2d at 478, 106 S. Ct. at 2693; *Lenard*, 808 F.2d at 1248. A public benefit occurs if the nursing home is propelled to implement any corrective policies or procedures as a result of actual or potential litigation. Moreover, notwithstanding any public benefit argument, the trial court did deny over $35,000 in fees and costs and may very well have done so because of the limited success achieved by the plaintiff.

The defendant's final argument with respect to the award of attorney fees is that the trial court erred in denying defendant's motion to compel production of plaintiff's fee agreement with her attorney and in refusing to consider whether the award of attorney fees to the plaintiff should be reduced to the extent, if any, that plaintiff's fee agreement provided for payment of a contingent fee to her attorneys. In support of its contention, the defendant cites one case, *Hapaniewski v. Rustin*, 179 Ill. App. 3d 951, 535 N.E.2d 24 (1989). *Hapaniewski* is irrelevant as it concerns an action for fees

---

[4]In support of its argument that the award of attorney fees bore no relationship to the plaintiff's success, Villa Scalabrini stated that the plaintiff prevailed on only one count of her eight-count complaint. This is an exaggeration of the facts, however, because four of those counts, one against each of the four defendants, presented wrongful death claims that were dismissed pursuant to plaintiff's own motion approximately two years before trial.

[5]See part XI for a discussion of plaintiff's proofs as to these damages.

brought by an attorney against his client. The attorney therein sought to recover a larger fee award based upon principles of *quantum meruit* in circumvention of the written fee agreement providing for a contingent fee. The court held that the attorney was bound by the express terms of his contract and could not recover under *quantum meruit* principles.

■ The instant case does not involve an attorney's right to recover payment from his client pursuant to the express terms of their contract. It involves an attorney's right to statutory fees against his client's tortfeasor. The statute establishes a right to fees but is silent as to the manner in which those fees are to be computed. Notwithstanding the absence of any legislative guidance in that respect, we are persuaded that the legislative intent behind the provision for fees, as discussed above, is to encourage, where warranted, the bringing of lawsuits by nursing home residents and their representatives. In that vein, we look to civil rights case law, which also acknowledges the need for private sector enforcement of the laws. See *City of Riverside v. Rivera*, 477 U.S. 561, 91 L. Ed. 2d 466, 106 S. Ct. 2686; *Hensley v. Eckerhart*, 461 U.S. at 444-45, 76 L. Ed. 2d at 57-58, 103 S. Ct. at 1945 (Brennan, J., concurring in part and dissenting in part) (civil rights laws depend heavily upon private enforcement and fee awards have proved an essential remedy); *Coop v. City of South Bend*, 635 F.2d 652 (7th Cir. 1980) (purpose of Civil Rights Attorney's Fees Awards Act is to permit and encourage the redress of civil rights litigation).

In *City of Riverside*, the Court rejected the notion that the amount of fees awarded to a prevailing plaintiff be proportionate to the amount of the plaintiff's recovery as is the case in private sector tort litigation. That Court, in affirming an attorney fee award of $244,456 where the plaintiffs recovered $33,350, stated:

"[The] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in enacting [the Civil Rights Attorney's Fees Awards Act]. Congress recognized that private-sector fee arrangements were inadequate to ensure sufficiently vigorous enforcement of civil rights. In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case." 477 U.S. at 578, 91 L. Ed. 2d at 482, 106 S. Ct. at 2696 (opinion of Brennan, J., joined by Marshall, Blackmun, and Stevens, JJ.)

In *Blanchard v. Bergeron*, 489 U.S. 87, 103 L. Ed. 2d 67, 109 S. Ct. 939 (1989), and *Lenard v. Argento*, 808 F.2d 1242 (7th Cir. 1987), the courts held that the existence of a contingent fee contract was a relevant factor to be considered in determining the reasonableness of the attorney fees. They also stated that, while relevant, contingent fee contracts could not place a ceiling upon fees recoverable by prevailing parties. In this regard, the *Lenard* court stated:

> "The existence of a contingent fee contract cannot be conclusive evidence of what a reasonable fee is, because the plaintiff's lawyer might not have been willing to take the case on the terms set forth in the contract except for the hope of some additional award under section 1988 [the Civil Rights Attorney's Fees Awards Act]." 808 F.2d at 1247.

According to the *Lenard* court, some civil rights cases resemble ordinary tort cases and could be handled conventionally and satisfactorily on a contingent fee basis. That court stated, "where the civil rights suit involves substantial stakes, settled precedent, and no defense of immunity, the resemblance may be close enough [to conventional personal injury suits] to give the terms of the contingent fee arrangement considerable evidentiary significance." 808 F.2d at 1248. In that event, and only that event, the fee set out in the contingent fee contract could have been presumptively adequate to attract competent counsel and induce them to take and press the case, the reason for statutory fees. But *cf. City of Burlington v. Dague*, 505 U.S. 557, 120 L. Ed. 2d 449, 112 S. Ct. 2638 (1992) (fee-shifting statutes do not permit enhancement of a fee award beyond the lodestar amount to reflect fact that plaintiff's attorneys were retained on a contingent fee basis).

We are persuaded as in *City of Riverside*, *Blanchard* and *Lenard* that the existence of a contingent fee agreement between the plaintiff and her attorney is a relevant factor to be considered in determining the amount of statutory attorney fees that should be awarded under the Nursing Home Care Reform Act. Since the trial court in the case at bar did not compel production of the fee agreement, there could have been no consideration by the court of that agreement when it made its determination as to the fee award, and, as a result, error occurred. However, even if a contingent fee agreement existed in the instant case, that agreement would have had minimal evidentiary weight. It is clear that based upon the nature of Haas' injuries, as borne out by the award returned by the jury, an attorney would not have been reasonably induced to represent the plaintiff without the expectation of statutory attorney fees. The test in order to be practicable and predictable in its implementation must be an objec-

tive one without the illusive complexity of attempting to determine the subjective anticipation of the individual attorney.

This case is distinguishable from *Lenard*, where the plaintiff's attorneys were awarded fees by the trial court in excess of what they would have been entitled to under the contingent fee agreement but where, even under the contingent fee agreement, they would have been awarded a substantial fee of $134,000. In that case, based upon the nature of the cause of action and the substantial award returned, the plaintiff's attorney would have had an objective basis to anticipate a high level of return even without the guarantee of a statutory fee. Here, as borne out by the actual award to the plaintiff, the contingent fee would have been nominal and inadequate relative to the effort that such recovery would entail. Thus, while the trial court in the instant case erred in refusing to compel production of plaintiff's fee agreement, the error if any was harmless since under the facts of this case the existence of a contingent fee agreement would have had little relevance.

### XIII. Attorney Fees and Costs

As plaintiff's final argument in her cross-appeal, she contends that the trial court erred in failing to award her all attorney fees and costs sought in her petition without offering clear and concise reasons. The plaintiff also argues that the court erred in denying fees that accrued during post-trial proceedings.

The trial court awarded attorney fees and costs to the plaintiff in the amount of $85,000, approximately $36,000 less than the $121,143 sought in plaintiff's petition. Despite plaintiff's contentions, the record shows that the trial court did not arbitrarily decrease the amount of fees and costs sought in her petition. The court held an extensive hearing on the petition, heard testimony from plaintiff's expert witness as well as from 10 attorneys who worked on plaintiff's case. The court found that the performance of plaintiff's attorneys was "excellent" and "exemplary" and further found that their fees should not be reduced even though the plaintiff succeeded on only one count of her complaint (finding that the same work and effort had to be done); and even though a directed verdict at the close of plaintiff's case had been granted to one of the defendants. The court found, however, that the amount of fees and costs sought by the plaintiff were not fair and reasonable and ordered fees and costs in the amount of $85,000.

The plaintiff argues that, since the defendants did not argue and since the trial court did not find fault with respect to any item listed in her fee petition, she should be entitled to all hours claimed to have been worked at the claimed hourly rate. This "lodestar" ap-

proach has been regarded as a starting point in federal civil rights cases, which, as with the Nursing Home Care Reform Act, allow for the statutory recovery of attorney fees to prevailing parties as an inducement to pursue private litigation. See *City of Riverside v. Rivera*, 477 U.S. 561, 91 L. Ed. 2d 466, 106 S. Ct. 2686 (1986); *Hensley v. Eckerhart*, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983). While the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate is "[t]he most useful starting point for determining the amount of a reasonable fee" (*Hensley*, 461 U.S. at 433, 76 L. Ed. 2d at 50, 103 S. Ct. at 1939), the courts have considered other factors that could adjust the lodestar figure upward or downward. As discussed in part VII of this opinion, those other considerations include the results obtained by the plaintiff in relation to the hours reasonably expended, whether the plaintiff failed to prevail on claims unrelated to the successful claims, the existence of a contingent fee contract between the plaintiff and her attorneys, and the existence of external benefits that advance the public interest and which secure important social benefits not reflected in small damage awards. See *City of Riverside v. Rivera*, 477 U.S. 561, 91 L. Ed. 2d 466, 106 S. Ct. 2686; *Hensley v. Eckerhart*, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933; *Lenard v. Argento*, 808 F.2d 1242 (7th Cir. 1987). These considerations, which, as discussed at length in part VII of this opinion, did not require further reductions sought by the defendants also lend support for the trial court's reduction of the amount of attorney fees sought by the plaintiff in her fee petition. Thus, we do not find that the trial court abused its discretion in denying a portion of the attorney fees sought by the plaintiff.

■ The plaintiff also contends that the trial court erred in denying in total her supplemental petition for fees and costs which covered the time period beginning after the period covered by her previous petitions, upon which the $85,000 award was made, up to the time of the filing of the supplemental petition. The plaintiff argues that section 3—602 of the Nursing Home Care Reform Act, which provides for the payment of attorney fees, makes no distinction between fees incurred during pretrial, trial, post-trial and appellate representation. The plaintiff further argues that, if attorneys are not remunerated for their post-trial and appellate representation of an aggrieved nursing home resident, the result could have a chilling effect in the future such that attorneys would be less likely to undertake the prosecution of such cases.

We agree with the plaintiff's arguments in this regard, and we find that the trial court erred in refusing to consider plaintiff's supplemental petition for attorney fees and costs covering the period

of their post-trial representation. Similarly, the plaintiff would be entitled to submit a supplemental petition to the trial court for attorney fees and costs incurred during the appellate process. See *F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 640 N.E.2d 1313 (1994) (contract term providing for the payment of attorney fees and costs incurred in enforcing any rights thereunder included right to supplemental fees and costs incurred after judgment was entered). However, as with any fee petition, only reasonable fees and costs should be allowed (see *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 518 N.E.2d 424 (1987)), and the trial court is only required to award those fees " 'reasonably expended,' " excluding therefrom fee requests for hours that are excessive, redundant, or otherwise unnecessary (*Hensley*, 461 U.S. at 434, 76 L. Ed. 2d at 50, 103 S. Ct. at 1939-40), focusing also on the other considerations discussed above.

For the foregoing reasons, we affirm the directed verdict in favor of the Catholic Bishop of Chicago, the judgment on the verdict in favor of defendants Cozzi and Becker against the plaintiff, the judgment on the verdict in favor of the plaintiff against Villa Scalabrini in the amount of $11,218.44, and the award of attorney fees and costs in the amount of $85,000. We remand the plaintiff's supplemental petition for fees and costs incurred after trial for further proceedings consistent with the views expressed herein.

Affirmed in part; reversed in part and remanded.

McNULTY, P.J, and HOURIHANE, J., concur.