# Illinois Official Reports

## Appellate Court

---

### *Collins v. Noltensmeier*, 2018 IL App (4th) 170443

---

| | |
|---|---|
| Appellate Court Caption | KENNY COLLINS and LINDA RICHARD, Plaintiffs-Appellees, v. PATRICIA NOLTENSMEIER, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-17-0443 |
| Filed | April 5, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cass County, No. 11-CH-23; the Hon. Bob G. Hardwick Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Luke A. Thomas, of McClure, Thomas & Thomas, of Beardstown, for appellant.<br><br>Jerry Tice and Bill Siders, of Grosboll, Becker, Tice & Barr, of Petersburg, for appellees. |
| Panel | PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion.<br>Justices Holder White and Steigmann concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant, Patricia Noltensmeier, appeals from the trial court's order granting summary judgment in favor of plaintiffs, Kenny Collins and Linda Richard, who had sued defendant for a breach of fiduciary duty and conversion. Defendant claims she had the authority pursuant to a power of attorney for property to change decedent's beneficiaries from plaintiffs to herself. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3        Defendant and Billy D. Collins were involved in a long-term romantic relationship when Billy died on January 23, 2011, at his home from a recently diagnosed terminal illness. Defendant had acted as Billy's caretaker. Approximately one week before he died, Billy executed a will and an Illinois Statutory Short Form Power of Attorney for Property. Each document was a preprinted form containing handwritten inserts in the blanks.

¶ 4        Billy's power of attorney, dated January 16, 2011, appointed defendant as his agent. Paragraph 3 of the document indicated the agent had the following powers, in addition to those listed previously: "power to make gifts, exercise powers of appointment, name or change beneficiaries under any beneficiary form or contractual arrangement."

¶ 5        Billy's will, also dated January 16, 2011, named defendant, his "domestic partner," as the sole beneficiary of his real property, personal property, and the "rest, residue, and remainder" of his estate. He also named defendant as his executor.

¶ 6        Defendant filed Billy's will with the Cass County circuit court in March 2011. In May 2011, plaintiff Kenny Collins, Billy's brother, filed a petition to contest the validity of Billy's will in Cass County case No. 11-P-15, alleging Billy was of unsound mind, subjected to undue influence from defendant, and not told the document he was signing was a will.

¶ 7        Kenny and plaintiff Linda Richard, Billy's niece, filed a three-count complaint in the cause before us, alleging defendant (1) breached her fiduciary duty owed to Billy, (2) wrongfully converted Billy's individual retirement account (IRA) funds to herself, and (3) did so intentionally, willfully and wantonly, and with malice, and therefore was responsible for punitive damages. The case sat dormant for approximately four years.

¶ 8        In April 2015, plaintiffs filed a first amended complaint, alleging the same causes of action with the exception of the claim for punitive damages, which plaintiffs abandoned. Plaintiffs alleged defendant wrongfully and without authorization changed the beneficiary of Billy's IRA, valued at approximately $45,000, from plaintiffs to herself. Defendant had completed the bank's change-of-beneficiary form by using her authority as the agent for Billy.

¶ 9        In May 2016, plaintiffs filed a motion for summary judgment, alleging defendant had engaged in fraudulent self-dealing. Plaintiffs claimed defendant breached her fiduciary duty because the added language in paragraph 3 of the power of attorney did not authorize her to make the change of beneficiary to herself.

¶ 10        In July 2016, the trial court conducted a hearing on plaintiffs' motion for summary judgment. Both parties represented they had found no Illinois cases on point. Plaintiffs cited *Bienash v. Moller*, 721 N.W.2d 431 (S.D. 2006), a South Dakota case where, under similar factual circumstances, the court held that a power of attorney failed to specifically include language permitting the agent to name himself as a beneficiary. Therefore, the court held, the

- 2 -

agent had breached his fiduciary duty to the principal by engaging in self-dealing. *Bienash*, 721 N.W.2d at 437.

¶ 11    In August 2016, the trial court entered a written order, granting plaintiffs' motion, finding no disputed facts remained, and holding, as a matter of law, that plaintiffs were entitled to a judgment in their favor. The court held:

"The power of self-dealing, *i.e.*, to change the beneficiary to herself, was not included in paragraph [three] and defendant was therefore not entitled to make that change. The original designation of beneficiary form *** remains valid and [plaintiffs] are each 50% beneficiaries of that [IRA] at Petefish, Skiles and Company Bank."

¶ 12    In September 2016, defendant filed a motion to reconsider, claiming the trial court had overlooked or failed to recognize the added language in paragraph 3, which, according to her, specifically authorized her to change the beneficiary designation. In December 2016, plaintiffs filed a motion for attorney fees.

¶ 13    In January 2017, the trial court conducted a hearing on the pending motions. After considering the arguments of counsel, the court stated:

"Well, in regard to the motion to reconsider, I am going to deny the motion. There is a duty of someone acting under a power of attorney as agent there has to be a fiduciary duty. The presumption is that, if they are self-dealing, which this is [ ] in my opinion, based upon the cases cited from other jurisdictions, I think they do make sense. Of course, they are not totally on point, exactly on point, but the general tenor and principles of those cases are on point that if the recipient of a power of attorney is going to be able to self-deal, in other words, to make gifts and transfers to himself or herself, then there has to be specific authority, in my opinion, granted in the power of attorney. Here the authority was granted to make gifts and to change beneficiaries, but there was no specific authority for [defendant] to self-deal. In other words, to change beneficiaries under accounts to herself. The presumption is it's fraudulent and it has to be overcome by clear and convincing evidence. I don't think there is. I have not seen any evidence. I would have to assume there is evidence, and I don't think from what we discussed before a little earlier there is any extrinsic evidence that would come in, and I think the motion for summary judgment is appropriate, and I will confirm my ruling from last August."

¶ 14    On May 2, 2017, the trial court entered a written order, denying defendant's motion to reconsider and finding defendant had no authority pursuant to the power of attorney to designate herself as a beneficiary of Billy's IRA. The court awarded plaintiffs attorney fees in the amount of one-third of the value of the IRA as of January 23, 2011, pursuant to their contingency fee agreement with counsel.

¶ 15    This appeal followed.

## II. ANALYSIS

¶ 17    The primary issue on appeal is whether plaintiffs are entitled to a judgment as a matter of law. The answer to that question depends on whether the language included in the power of attorney granted defendant the authority to change the beneficiary on Billy's IRA to herself. If it did not, defendant presumably engaged in fraudulent self-dealing. Defendant's act of self-dealing then is invalid unless there is evidence to rebut the presumption of fraud. On

appeal, defendant insists the answer lies within the four corners of the document and any analysis of fraudulent self-dealing is irrelevant.

¶ 18 The trial court, finding support from *Bienash*, held that, in order for defendant to have the authority to change a beneficiary designation to herself, the power of attorney document must have specifically stated such. See *Bienash*, 721 N.W.2d at 437. We find the trial court's reliance on *Bienash* was unnecessary. That is, to resolve this case, we need to look no further than the Illinois power-of-attorney statute and our common-law cases addressing an agent's fiduciary duty and the presumption of fraudulent self-dealing.

¶ 19 ### A. Standard of Review on Summary Judgment

¶ 20 "Summary judgment is appropriate where 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 201 (2008) (quoting 735 ILCS 5/2-1005(c) (West 2000)). "Summary judgment is a drastic remedy and should be allowed only when the right of the moving party is clear and free from doubt." *Jones v. Chicago HMO Ltd.*, 191 Ill. 2d 278, 291 (2000). "Accordingly, where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact." *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 424 (1998). "On appeal from a trial court's decision granting a motion for summary judgment, our review is *de novo*." *Bowles v. Owens-Illinois, Inc.*, 2013 IL App (4th) 121072, ¶ 19.

¶ 21 ### B. Illinois Power of Attorney Act

¶ 22 Defendant contends that the added language in paragraph 3 of the power of attorney document was sufficient to unequivocally authorize her to "name or change beneficiaries under any beneficiary form or contractual arrangement" to herself included. To the contrary, plaintiffs contend that defendant engaged in fraudulent self-dealing in violation of the fiduciary duty she owed to Billy.

¶ 23 In 1987, the legislature enacted the Illinois Power of Attorney Act (Act) (755 ILCS 45/1-1 to 4-12 (West 2010)). The Act includes article III, the Statutory Short Form Power of Attorney for Property Law (755 ILCS 45/3-1 to 3-5 (West 2010)), which provides a standardized short form power of attorney for individuals to use. The form sets forth optional powers and allows a principal to "design the power of attorney best suited to his or her needs in a simple fashion and be assured that the agent's authority will be honored by third parties with whom the agent deals, regardless of the physical or mental condition of the principal at the time the power is exercised." 755 ILCS 45/3-1 (West 2010).

¶ 24 Section 3-4 of the Act explains the powers listed in the form and states:

> "[T]he agent will not have power under any of the statutory categories (a) through (o) to make gifts of the principal's property, to exercise powers to appoint to others or to change any beneficiary whom the principal has designated to take the principal's interests at death under any will, trust, joint tenancy, beneficiary form or contractual arrangement." 755 ILCS 45/3-4 (West 2010).

¶ 25    A power of attorney creates a fiduciary relationship as a matter of law. *In re Estate of Shelton*, 2017 IL 121199, ¶ 22; 755 ILCS 45/2-7(a), (b) (West 2010) (codifying the agent's duty of care owed to the principal for purposes of the Act). The mere existence of a fiduciary relationship prohibits the agent from seeking or obtaining any selfish benefit for herself; if the agent seeks or obtains such benefit, the transaction is presumed to be fraudulent. See *Shelton*, 2017 IL 121199, ¶ 23. "Thus, any conveyance of the principal's property that either materially benefits the agent or is for the agent's own use is presumed to be fraudulent." *Spring Valley Nursing Center, L.P. v. Allen*, 2012 IL App (3d) 110915, ¶ 12. "Once a fraudulent transaction has been alleged, the burden then shifts to the agent to prove by clear and convincing evidence that the transaction was fair and did not result from his undue influence over the principal." *Shelton*, 2017 IL 121199, ¶ 23.

¶ 26    In other words, the presumption of fraud is rebuttable if it can be shown that the agent exercised good faith and did not betray the confidence placed in her. *Jones v. Washington*, 412 Ill. 436, 441 (1952); *Clark v. Clark*, 398 Ill. 592, 601 (1947); *Spring Valley Nursing Center, L.P.*, 2012 IL App (3d) 110915, ¶ 13; *In re Estate of DeJarnette*, 286 Ill. App. 3d 1082, 1088 (1997); *Glass v. Burkett*, 64 Ill. App. 3d 676, 680-81 (1978). If the agent rebuts the presumption of fraud, the transaction in question will be upheld. See 755 ILCS 45/2-7(a) (West 2010) (agent who acts with due care for the benefit of the principal will not be held liable merely because the act also benefits the agent); *Clark*, 398 Ill. at 602 ("[i]f a conveyance was not procured through improper means attended with circumstances of oppression or overreaching, but was entered into by the grantor with full knowledge of its nature and effect and because of his or her deliberate, voluntary and intelligent desire, the existence of a fiduciary relation does not invalidate the transaction").

> " 'A rebuttable presumption, such as exists here, is not evidence in itself, but arises as a rule of law or legal conclusion from the facts proved. [Citations.] These presumptions "do not shift the burden of proof. Their only effect is to create the necessity of evidence to meet the *prima facie* case created thereby, and which, if no proof to the contrary is offered, will prevail." [Citations.] Stated differently, the presence of a presumption in a case only has the effect of shifting to the party against whom it operates the burden of going forward and introducing evidence to meet the presumption. If evidence is introduced which is contrary to the presumption, the presumption will cease to operate. [Citations.]' " (Internal quotation marks omitted.) *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 461-62 (1983) (quoting *McElroy v. Force*, 38 Ill. 2d 528, 532-33 (1967)).

¶ 27    Section 2-7(a) of the Act provides, in part, as follows:

> "Whenever a power is exercised, the agent shall act in good faith for the benefit of the principal using due care, competence, and diligence in accordance with the terms of the agency and shall be liable for negligent exercise. An agent who acts with due care for the benefit of the principal shall not be liable or limited merely because the agent also benefits from the act, has individual or conflicting interests in relation to the property, care or affairs of the principal or acts in a different manner with respect to the agency and the agent's individual interests." 755 ILCS 45/2-7(a) (West 2010).

¶ 28    Here, because the transaction in question is presumed to be an exercise of fraudulent self-dealing, defendant must demonstrate either (1) the language of the power of attorney itself authorized the act of self-dealing or (2) by some other evidence, Billy intended, without undue

influence, to authorize defendant to so act.

¶ 29                    C. Language of the Power of Attorney

¶ 30    "A written power of attorney must be strictly construed so as to reflect the 'clear and obvious intent of the parties.' " (Internal quotation marks omitted.) *Shelton*, 2017 IL 121199, ¶ 31 (quoting *Fort Dearborn Life Insurance Co. v. Holcomb*, 316 Ill. App. 3d 485, 499 (2000)). As this court has previously stated: "We look to the words of the actual power of attorney to see what powers were granted to respondent." *In re Estate of Nicholls*, 2011 IL App (4th) 100871, ¶ 25.

¶ 31    Defendant relies on the inserted language in paragraph 3, which stated she had the "power to make gifts, exercise powers of appointment, name or change beneficiaries under any beneficiary form or contractual arrangement" to argue she had been granted the power to change a designated beneficiary to herself. However, the general powers granted to defendant pursuant to paragraph 3 did not specifically include the power to change the beneficiary on Billy's IRA to herself, a presumed fraudulent act of self-dealing. Thus, we find no authorization for such transaction in the document itself.

¶ 32                    D. Rebuttable Presumption of Fraudulent Transaction

¶ 33    Absent the expression of authority in the document itself to designate herself a beneficiary, it is presumed defendant engaged in an act of fraudulent self-dealing. As such, plaintiffs are entitled to summary judgment on this issue unless evidence exists to rebut the presumption of fraud. See *Franciscan Sisters*, 95 Ill. 2d at 462 ("If evidence is introduced which is contrary to the presumption, the presumption will cease to operate." (Internal quotation marks omitted.)).

¶ 34    "Some of the significant factors to be considered in determining if the presumption of fraud has been rebutted include whether the fiduciary made a frank disclosure to the principal of the information he had, whether the fiduciary paid adequate consideration, and whether the principal had competent and independent advice." *Spring Valley Nursing Center, L.P.*, 2012 IL App (3d) 110915, ¶ 13. No such evidence exists in the record before us.

¶ 35    There is no question that, under the law, defendant's act of changing the beneficiary of Billy's IRA from plaintiffs to herself gave rise to a presumption of fraud. See *Clark*, 398 Ill. at 601; *Spring Valley Nursing Center, L.P.*, 2012 IL App (3d) 110915, ¶ 15. The presumption is strengthened by the absence of (1) specific language in the power of attorney authorizing such transaction and (2) any other evidence of Billy's intent. Further, nothing in the record suggests defendant acted in a manner directed by Billy, that Billy received separate and independent advice on the matter, or that he intended to name defendant, while removing plaintiffs as beneficiaries on his IRA. See *Spring Valley Nursing Center, L.P.*, 2012 IL App (3d) 110915, ¶ 16.

¶ 36    Here, defendant is unable to demonstrate by clear and convincing evidence she indeed had the authority as Billy's agent to self-deal. Defendant did not carry her burden of rebutting the presumption of fraud related to her self-dealing transaction. Therefore, we affirm the trial court's order granting summary judgment in favor of plaintiffs.

¶ 37                                    E. Attorney Fees

¶ 38       Defendant next contends the trial court erred in awarding attorney fees to plaintiffs
pursuant to section 2-7(f) of the Act. 755 ILCS 45/2-7(f) (West 2010). That section provides as
follows:

> "An agent that violates this Act is liable to the principal or the principal's successors in
> interest for the amount required (i) to restore the value of the principal's property to
> what it would have been had the violation not occurred, and (ii) to reimburse the
> principal or the principal's successors in interest for the attorney's fees and costs paid
> on the agent's behalf. This subsection does not limit any other applicable legal or
> equitable remedies." 755 ILCS 45/2-7(f) (West 2010).

¶ 39       The legislative intent behind this section of the Act suggests that attorney fees should be
awarded whenever a violation of the Act is proved in order to make the principal's estate
whole. That is, an award of attorney fees under this section does not involve an attorney's right
to recover payment from his client pursuant to the express terms of their contract. Instead, an
award determination involves an attorney's right to statutory fees against his clients'
tortfeasor. See *Berlak v. Villa Scalabrini Home for the Aged, Inc.*, 284 Ill. App. 3d 231, 240
(1996). The existence of a contingent fee contract is a relevant factor to be considered in
determining the reasonableness of attorney fees. *Berlak*, 284 Ill. App. 3d at 241.

¶ 40       The trial court granted plaintiffs' motion for attorney fees. Relying on the statutory intent
of making plaintiffs whole, the court found "the costs and fees to correct the wrongdoing of the
defendant should not fall on the plaintiffs in any way." Counsel for plaintiffs indicated to the
court that they were retained by plaintiffs on a one-third contingency contract plus costs. After
reviewing an affidavit from plaintiffs' counsel, the retainer agreement on the contingent fee,
and the representation from the bank that the IRA had a value of $44,496.46 as of January 23,
2011 (the date of Billy's death), the court entered judgment against defendant for attorney fees
in the amount of $14,832.15, representing one third of the value of the IRA, plus costs.

¶ 41       The general rule is that parties in a lawsuit are responsible for their own attorney fees.
*Myers v. Popp Enterprises, Inc.*, 216 Ill. App. 3d 830, 838 (1991). However, a court may
award attorney fees if they are expressly authorized by statute or by agreement of the parties.
*In re Marriage of Magnuson*, 156 Ill. App. 691, 700 (1987). Only those fees that are
reasonable will be allowed. *LaHood v. Couri*, 236 Ill. App. 3d 641, 648 (1992). "This court has
held that, for purposes of determining statutory attorney fees, the term 'reasonable' applies
regardless of the nature of the client's contractual relationship with his attorney." *Blankenship
v. Dialist International Corp.*, 209 Ill. App. 3d 920, 927 (1991). The trial court's decision in
awarding statutory attorney fees will not be reversed absent an abuse of discretion.
*Blankenship*, 209 Ill. App. 3d at 927.

¶ 42       However, "an attorney fee award cannot be based solely on an amount necessary to satisfy
a contingent fee agreement existing between an attorney and a client." *Collins v. Hurst*, 316 Ill.
App. 3d 171, 173 (2000). Though the trial court found the contingent fee agreement between
plaintiffs and their attorney reasonable, defendant was not a party to that agreement. Further,
the statute allowing for an award of attorney fees in this case did not provide for the payment of
fees based on a contingent fee. While a court may consider the existence of a contingent fee
agreement, it is only one factor of many to be examined to determine the reasonableness of the
award. See *Blankenship*, 209 Ill. App. 3d at 927. Where a statute allows fees to be paid to the

other party, the fee must be reasonable regardless of the agreement between the litigant and his attorney. *Blankenship*, 209 Ill. App. 3d at 927.

¶ 43 In this case, the trial court appropriately enforced the attorney fee provision contained in the statute after finding defendant had violated the Act. The court then determined the above-referenced contingent fee constituted a reasonable award in this case. Plaintiffs' counsel provided an affidavit in support of their motion for fees. Counsel averred that two attorneys worked a total of 134.5 hours between them on this case. At their respective hourly rates, their fees totaled $25,290. However, as noted, the fee due on the contingency contract equaled $14,832.15, as one-third of the value of the IRA at the time of Billy's death. The court found the contingency fee to be a reasonable award. We find the trial court did not abuse its discretion in its consideration of plaintiffs' contingency-fee agreement and subsequent award of attorney fees in this case.

¶ 44                                  III. CONCLUSION
¶ 45 For the reasons stated, the trial court's judgment is affirmed.

¶ 46 Affirmed.