FIRST DIVISION

August 28, 2000 

No. 1-99-3627

FORT DEARBORN LIFE INSURANCE COMPANY,       ) Appeal from the 

           ) Circuit Court of

) Cook County

Plaintiff,           )

           ) 

           )   

           ) 95 CH 9183

JANET HOLCOMB,           )

           )

Defendant-Appellant           ) 

           ) Honorable

   ) Dorothy Kinnaird,

(Susan V. Downing, ) Judge Presiding

) 

Defendant-Appellee). ) 

         

JUSTICE COHEN delivered the opinion of the court:

Following the death of Paul Downing, plaintiff Fort Dearborn Life Insurance Company filed an interpleader action (735 ILCS 5/2-409 (West 1998)) against Susan Downing, the decedent's widow, and Janet Holcomb, the decedent's companion at the time of his death.  The action sought to resolve competing claims to the proceeds of two insurance policies decedent held with the plaintiff.  Defendant-appellant Janet Holcomb appeals from the circuit court of Cook County's grant of summary judgment in favor of defendant-appellee Susan Downing which declared Susan the proper beneficiary under the life insurance policies.  Janet argues that the trial court erred in applying the provisions of the Illinois Power of Attorney Act (755 ILCS 45/1-1 
et
 
seq
. (West 1998)) to the uncontested facts with regard to two issues: (1) the scope of the agent's authority pursuant to the subject power of attorney and (2) whether the agent's authority had been revoked.  For the following reasons, we reverse and remand for further proceedings consistent with this opinion.

I. FACTS

Paul and Susan Downing were married on February 27, 1967.  The couple had three children.  On June 27, 1990, Paul executed a document entitled "Power of Attorney" (1990 power) which appointed his wife Susan as his agent to act on his behalf in certain enumerated property transactions.  The agency created by the 1990 power became effective only upon Paul's disability.  In 1992, Paul and Susan experienced marital difficulties which culminated in Paul's departure from the marital home in June of 1992.  In 1993, Susan filed a petition for dissolution of marriage in the circuit court of Cook County under case number 93 D 6708.  

On December 22, 1993, Paul and Susan entered into a formal separation agreement (1993 agreement) which provided for the equitable distribution of most of their assets in the event that their current attempts at reconciliation failed.  Assets accounted for in the 1993 agreement included the Downings' marital home, located at 1015 Pine Street in Winnetka, Illinois, a single-family residence in Galena, Illinois, which the Downings owned jointly through a land trust, jointly held investment accounts with a total value of $1,328,400 and retirement funds owned by Paul totaling $1,099,950.   The agreement further provided that neither party would by beneficiary designation, will, 
inter vivos
 trust or in any other way allow the property subject to the agreement to become the property of any other person at the death of the party holding title.

At the time the 1993 separation agreement was executed, Paul was the named insured on two group life insurance policies issued by the Fort Dearborn Life Insurance Company.  The first policy was issued to the Safer Foundation, Paul's employer, as policyholder with a death benefit equal to $158,000.  The second policy was issued to Healthcare Services Corporation, as policyholder, with a death benefit of $120,000.  The 1993 agreement did not account for or include any reference to the subject life insurance policies.  The policies named Susan Downing as the sole beneficiary.

Sometime prior to 1994, Paul returned to the marital home.  On April 19, 1994, Paul and Susan executed an additional agreement whereby Paul agreed to leave the marital home and to remove most of his possessions.  Paul and Susan lived separate and apart from that time forward.  In 1995, a second petition for dissolution of the Downing marriage was filed in the circuit court of Cook County under case number 95 D 3620.  

 In early June 1995, Paul became seriously ill and sought medical treatment at Northwestern Memorial Hospital.  During a series of admissions to Northwestern, Paul was diagnosed with a widespread, virulent cancer.  His health rapidly deteriorated.  Paul died from cancer on July 7, 1995, leaving three adult sons and his estranged wife Susan surviving him.

For several years prior to and continuing until his death, Paul Downing was involved in a romantic relationship with Janet Holcomb.  While confined to Northwestern for tests and treatment, Paul requested that his private secretary, Laverne Anderson, obtain change of beneficiary forms for his life insurance  policies with Safer Foundation and Healthcare Services Corporation.  On June 21, 1995, Anderson delivered the forms to the hospital and observed Paul complete and sign them.  After signing the forms, Paul then instructed Anderson to deliver the change of beneficiary forms to the human resource department at the Safer Foundation.  The change of beneficiary forms executed by Paul on June 21, 1995, named his companion Janet Holcomb as the sole beneficiary.

   The power of attorney executed by Paul in 1990 states that the agency created therein would become effective upon a written declaration of his disability by his personal physician, Neal Stone, M.D.   On June 27, 1995, at the request of Daniel Hales, attorney for Paul's wife Susan, Dr. Stone declared Paul disabled.  On June 30, 1995, Susan faxed a copy of the 1990 power to the Safer Foundation as insurance transactions were included in the agency.  In response, Paul's attorney, Anthony J. Pauletto, immediately faxed a letter to both Susan's attorney and the Safer Foundation denying the validity of the 1990 power based on the acrimonious nature of the Downings' relationship and the pending litigation for the dissolution of their marriage.

On July 2, 1995, Dr. Stone reexamined Paul and notified both Janet and Susan that Paul was now competent to make decisions.   Shortly after Dr. Stone's declaration, Paul drafted and signed a statement, dated July 2, 1995, which appointed  Janet Holcomb as his attorney-in-fact for the purpose of making medical decisions and granted her unlimited visiting privileges.  Paul also stated that Susan was not allowed to make decisions regarding his care or finances.  Paul further stated that Susan was prohibited from visiting or contacting him absent the express consent of his attorney, Anthony J. Pauletto.  This statement was not communicated to Susan or the Safer Foundation until after Paul's death.     

On July 5, 1995, Paul was again declared disabled by Dr. Stone.  On this date, considering herself acting as Paul's agent pursuant to the 1990 power, Susan executed a change of beneficiary form for the life insurance policy held by Health Care Services Corporation.  On July 6, 1995, Susan executed an additional change of beneficiary form for the life insurance policy held by the Safer Foundation.  On each change of beneficiary form, Susan named herself as the sole beneficiary.  After Paul's death on July 7, 1995, Susan submitted a claim to Fort Dearborn Life Insurance Company for  death benefits under the subject policies.  

 In light of the foregoing facts, Fort Dearborn instituted an interpleader action in the circuit court of Cook County, under case number 95 CH 9183, alleging that the rightful claimant to the insurance proceeds remained unclear.  In response to this action, Janet Holcomb filed a counterclaim against Susan Downing and Fort Dearborn claiming that she is entitled to the death benefit proceeds as a result of the June 21, 1995, beneficiary designations by Paul Downing.  Susan Downing then filed a cross-claim alleging in counts I and II that the June 21, 1995, change of beneficiary forms executed by Paul were void and unenforceable due to Paul's lack of mental capacity and Janet's exercise of undue influence.  In count III, Susan further alleged that she was the named beneficiary at the time of Paul's death because the change of beneficiary forms executed by her in July 1995 were a proper exercise of the authority granted to her in the 1990 power.    

Following a hearing on July 31, 1996, the trial court denied Janet's motion for partial summary judgment pursuant to section 2-1005(d) of the Illinois Code of Civil Procedure (735 ILCS 5/2-1005(d) (West 1998)) which sought a determination that the 1990 power did not authorize Susan to execute change of beneficiary forms.  In ruling, the trial court determined as a matter of law that the power of attorney in the case at bar was not a "Statutory Short Form Power of Attorney for Property" (Short Form) thereby entitling its provisions to be given the meaning and effect prescribed in Article III of the Illinois Power of Attorney Act, also known as the "Statutory Short Form Power of Attorney for Property Law" (Short Form Act) 755 ILCS 45/3-1 
et
 
seq
. (West 1998).  Instead, the court ruled that the 1990 power was a "nonstatutory"
 
property power governed by Article II of the Illinois Power of Attorney Act, also known as the "Durable Power of Attorney Law" (755 ILCS 45/2-1 
et
 
seq
. (West 1998)).  As such, the court determined that the 1990 power granted Susan broad plenary powers, including the power to change beneficiaries on Paul's life insurance policies.  The trial court then instructed the parties that further proceedings would be limited to whether Paul properly revoked the 1990 power.  

On September 27, 1999, after hearing argument on the parties' cross-motions for summary judgment, the trial court reaffirmed its prior ruling that the 1990 power was "durable" and granted Susan authority to change the beneficiary on Paul's life insurance policies.  The court further determined that the agency created by the 1990 power had not been revoked by Paul prior to his death.  Thus, summary judgment was granted in favor of Susan Downing on count III of her second amended cross-claim and Janet Holcomb's motion for summary determination of major issues was denied.  In addition, counts I and II of Susan's second amended cross-claim, alleging lack of mental capacity and undue influence, were rendered moot.  This appeal followed.

II. ANALYSIS

 Janet contends on appeal that the trial court erred by (1) failing to apply the provision in section 3-4 of the Short Form Act that expressly states that an agent does not have the power to change any beneficiary designated by the principal, (2) determining that the 1990 power was a "broad form" or "durable" power of attorney not subject to the limitations in section 3-4 of the Short Form Act, (3) interpreting a "catchall" provision in the 1990 power as authorization to change beneficiaries, and (4) finding that the agency created by the 1990 power was not effectively revoked.  It is important to note that Janet, as appellant, does not argue that the evidence before the trial court gave rise to a triable issue of material fact, thereby precluding summary judgment.  Thus, the sole issue on appeal is whether the trial court  properly applied the relevant law to the uncontested facts of this case. 

Summary judgment is proper when the pleadings, depositions, admissions on file and any affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 1998). The interpretation of a formal power of attorney and the effect of relevant statutory provisions on the powers granted the agent named therein are questions of law that are appropriately decided on a motion for summary judgment. See 
Wirtz Realty Corp. v. Freund
, 308 Ill. App. 3d  866, 873 (1999).  
The standard of review on a summary judgment ruling involving statutory interpretation is 
de novo.  King v. Industrial Comm'n, 
189 Ill. 2d 167,171 (2000); 
McNamee v. State
, 173 Ill. 2d 433, 438 (1996).

A. Statutory Short Form Power of Attorney for Property Law

At issue in this appeal is whether the subject power of attorney is governed by the provisions of the Short Form Act (755 ILCS 45/3-1 
et
 
seq
. (West 1998)).  It is uncontested that if the 1990 power is a Short Form, Susan Downing would have been statutorily precluded from changing the beneficiary on Paul's life insurance policies as such authority was not expressly granted in the power.  If, however, the 1990 power is a  nonstatutory
 
property power governed by the Durable Power of Attorney Law, the court must interpret the provisions of the 1990 power to determine if the language therein granted Susan full plenary powers that would include authority to change Paul's beneficiary designation.

The Short Form Act was enacted by the legislature for the purpose of creating a standardized form that individuals could readily use to authorize an agent to act for them in dealing with their property and financial affairs. 755 ILCS 45/3-1 (West 1998).  Section 3-3 of the Short Form Act sets forth the conditions necessary for a power of attorney to be considered a Short Form.  Specifically, this section provides:   

"The following form may be known as 'statutory property power' and may be used to grant an agent powers with respect to property and financial matters. When a power of attorney in 
substantially the following form
 is used, including the 'notice' paragraph at the beginning in capital letters and the notarized form of acknowledgment at the end, it shall have the meaning and effect prescribed in this Act."  (Emphasis added.) 755 ILCS 45/3-3 (West 1998). 

The question of what constitutes "substantial" compliance with the Short Form is one of first impression in Illinois.

 When construing a disputed statutory provision, the court's primary goal is to ascertain and give effect to the legislature's intent.
 In re J.R.,
 307 Ill. App. 3d 175, 180 (1999).  To determine the legislative intent, we first consider the statutory language.
  State Farm Fire & Casualty Co. v. Yapejian
, 152 Ill. 2d 533, 540-41 (1992).  The language within each section of a statute must be examined in light of the entire statute. 
Stone v. Department of Employment Security Board of Review,
 151 Ill. 2d 257, 261 (1992).  The court may also consider the reason and necessity for the law, the evils to be remedied, and the objectives to be attained.  
Koperski v. Amica Mutual Insurance Co.,
 287 Ill. App. 3d 494, 497 (1997). The court will assume that the legislature did not intend to produce an absurd or unjust result. 
 Yapejian
, 152 Ill. 2d at 541.

The trial court determined that the power of attorney executed by Paul Downing in 1990   

was not in "substantially" the form set forth in the section 3-3 and was therefore not entitled to the meaning and effect prescribed in the Short Form Act.  The court stated:

"If it had been a short form power of attorney, yes, Susan Downing could not change the beneficiary unless it was specifically indicated therein, but this document doesn't follow the statutory form and I have interpreted it as being a 
long form 
 or a 
general doable 
[
sic
] power of attorney ***."  (Emphasis added).

The trial court, after acknowledging that the first paragraph of the 1990 power specifically references the Short Form Act, went on to state, "after that everything kind of falls apart and is totally different than the short form in the statute."  The trial court also stated, "[u]ndoubtedly, the [s]ection 3 form is used as a model for Paul's power of attorney, but internal evidence 
suggests
 it was not intended to be limited by section 3." (Emphasis added.)  We disagree.

The disposition of this case turns on whether the form outlined in section 3-3 of the Short Form Act, for use when creating a "statutory property power,"
 
is mandatory.
 
 Whether a statutory provision is mandatory or merely directory depends upon the intent of its drafters. 
North Shore Community Bank & Trust Co. v. Kollar
,  304 Ill. App. 3d 838, 846 (1999).  As noted, intent is first ascertained from the language of the statutory provision.  
Yapejian
, 152 Ill. 2d at 541. When construing a statute, words must be given their plain and ordinary meaning.  
O'Connor v. Cook County Officers Electoral
 
Board, 
281 Ill. App. 3d 1108, 1112 (1996). 

 The word "substantially," as used in the context found in section 3-3,  has been defined as "'in the main,' 'essentially,' 'practically,' 'nearly,' 'almost' or 'virtually.'" 
O'Connor
, 281 Ill. App. 3d at 1113.   "It does not mean 'identically' or 'exactly alike,' and thus, does not connote a mandatory obligation as to the form ***." 
O'Connor
, 281 Ill. App. 3d at 1113.  Thus, we hold that the Short Form provided in section 3-3 is merely directory and that absolute or exact compliance with the statutory format is not required.   It is axiomatic that if the legislature had intended that every Short Form power of attorney be in the exact form set out in section 3-3, it would not have used the word "substantially." 

Further support for this interpretation is found in the statutory language of section 3-1 of the Short Form Act, where the General Assembly states its purpose for adopting the Short Form.  This section states, in relevant part:

"A short statutory form offering a set of optional powers is necessary so that the individual 
may design 
the power of attorney best suited to his or her needs in a simple fashion and be assured that the agent's authority will be honored by third parties with whom the agent deals, regardless of the physical or mental condition of the principal at the time the power is exercised." (Emphasis added.) 755 ILCS 45/3-1 (West 1998). 

By indicating that a person "may design" the Short Form to suit his or her individual needs, the legislature obviously intended that powers of attorney varying to some extent from the Short Form in section 3-3 would  still be entitled to the meaning and effect prescribed in the Short Form Act.

Susan argues on appeal that the 1990 power's failure to include the "notice" provision required by section 3-3 precludes a finding that the 1990 power is a Short Form.  Susan's argument must fail.  This court's holding that the form outlined in section 3-3 of the Short Form Act is merely directory encompasses the notice provision.  While section 3-3 states that the Short Form "includ[es] the 'notice' paragraph at the beginning in capital letters and the notarized form of acknowledgment at the end," we must construe this provision in light of the objectives to be attained by the notice provision and we must assume that the legislature did not intend to produce an absurd or unjust result. 
 Yapejian
, 152 Ill. 2d at 541.  

The notice provision in section 3-3 of the Short Form Act provides in part:

"(NOTICE: THE PURPOSE OF THIS POWER OF ATTORNEY IS TO GIVE THE PERSON YOU DESIGNATE (YOUR 'AGENT') BROAD POWERS TO HANDLE YOUR PROPERTY, WHICH MAY INCLUDE POWERS TO PLEDGE, SELL OR OTHERWISE DISPOSE OF ANY REAL OR PERSONAL PROPERTY WITHOUT ADVANCE NOTICE TO YOU OR APPROVAL BY YOU.  ***  THE POWERS YOU GIVE YOUR AGENT ARE EXPLAINED MORE FULLY IN SECTION 3-4 OF THE ILLINOIS 'STATUTORY SHORT FORM POWER OF ATTORNEY FOR PROPERTY LAW' OF WHICH THIS FORM IS A PART (SEE THE BACK OF THIS FORM). THAT LAW EXPRESSLY PERMITS THE USE OF ANY DIFFERENT FORM OF POWER OF ATTORNEY YOU MAY DESIRE.)" 755 ILCS 45/3-3 (West 1998).

It is clear that the function of this provision is simply to inform the principal of the nature of the powers he is granting his agent.  Indeed, it would be an "absurd or unjust result" if a power of attorney that complies with the Short Form in all other respects loses its status as a "statutory property power" solely because it does not include the notice provision.  This is especially true in light of the fact that such an interpretation would give the agent much broader powers than intended by the principal.  Therefore, we conclude that whether a power of attorney "substantially" follows the form outlined in section 3-3 does not depend on the presence or absence any particular clause.  Rather, the court must determine whether the power of attorney, in its totality, indicates that the legislative purpose of the Short Form Act has been satisfied.  See  
O'Connor
, 281 Ill. App. 3d at 1113; 
Kathy O. v. Counseling & Family Services
, 107 Ill. App. 3d 920, 925 (1982) (upholding the validity of adoption consents, and noting that the purpose of the relevant statute had been satisfied, even though the form was deficient).

In order to determine whether the power of attorney at issue in this case is a Short Form, we must compare it with the statutory provisions.  The power of attorney executed by Paul Downing in 1990 provides, in relevant part:

"POWER OF ATTORNEY  made this  
27th
 day of  June, 1990

   1. I,  Paul Downing, hereby appoint: Susan Downing as my attorney-in-fact (my 'agent') to act for me and in my name (in any way I could act in person) with respect to the following powers, as defined in Section 3-4 of the 'Statutory Short Form Power of Attorney for Property Law' including all amendments), but subject to any additions to the specified powers inserted in paragraph 3 below: 

      (a) Real estate transactions. 

   (b) Financial institution transactions. 

   (c) Stock and bond transactions. 

   (d) Tangible personal property transactions. 

   (e) Safe deposit box transactions. 

   (f) Insurance and annuity transactions. 

   (g) Retirement plan transactions. 

   (h) Social Security, employment and military service benefits. 

   (i) Tax matters. 

   (j) Claims and litigation. 

   (k) Commodity and option transactions. 

   (l) Business operations. 

   (m) Borrowing transactions. 

   (n) Estate transactions. 

   (o) All other property powers and transactions." 

This introductory paragraph is virtually identical to the Short Form in section 3-3, which is set out in the appendix.  The only difference between the first paragraph of 1990 power and the Short Form is that in the last sentence before statutory powers (a) through (o) are listed, the statutory form states, "subject to any 
limitations on or 
additions to the specified powers inserted in paragraph 2 
or
 3 below." (Emphasis added.) 755 ILCS 45/3-3 (West 1998).   In the 1990 power, Paul struck the words "limitations on" because he did not include any such limitations in paragraphs 2 or 3 of the power.  This slight difference illustrates how the Short Form may be tailored to meet the individual needs of the principal as noted above in the General Assembly's stated purpose. See 755 ILCS 45/3-1 (West 1998).

The trial court found it significant that the second paragraph in the 1990 power is totally different from the second paragraph in the Short Form.  Once again, we note that the legislature intended that the Short Form be altered if it is inconsistent with the needs of the principal.  Paragraph 2 of the Short Form states:  

"2. The powers granted above shall not include the following powers or shall be modified or limited in the following particulars (here you may include any specific limitations you deem appropriate, such as a prohibition or conditions on the sale of particular stock or real estate or special rules on borrowing by the agent): ***." 755 ILCS 45/3-3 (West 1998).

 As the 1990 power did not place any 
additional
 limitations on the statutory powers (a) through (o), paragraph 2 of the Short Form became irrelevant.  Instead, the second paragraph of the 1990 power contains the following language:

"2. In addition to the powers granted above, I grant my agent full power and authority to do and perform all and every other act and thing that I may legally do through an attorney in fact, and every proper power to carry out those acts and things."  

The trial court interpreted paragraph 2 of the 1990 power as a significant departure from the Short Form, evincing an intent by Paul that his power of attorney not be limited by the Short Form Act.  The trial court also rejected Janet's argument that the holding of the appellate court in 
In re Guardianship of Mabry
, 281 Ill. App. 3d 76 (1996), controlled this issue.   The trial court distinguished 
Mabry,
 stating that the clause at issue in 
Mabry
 did not contain the same language as paragraph 2 of the 1990 power.  We disagree.

In re Guardianship of Mabry
, 281 Ill. App. 3d 76 (1996), involved a dispute over whether a power of attorney granted the agent the power to sell or transfer real estate.  The instrument expressly granted the agent the authority in paragraph 1 "'[t]o manage and lease my real estate, collect the rent therefrom and pay the usual and customary expenses paid by owners of real estate'." 
Mabry,
 281 Ill. App. 3d at 83.  Paragraph 7 granted the agent additional power, "in general, to do all other acts, matters and things whatsoever in or about the specified premises of this Power of Attorney to all intents and purposes as I could do in my own proper person if personally present." 
Mabry,
 281 Ill. App. 3d at 83.   The appellate court rejected plaintiff's argument that the "catchall" provision in paragraph 7 should be read as a grant of full plenary powers to do all acts regarding the subject property including the power to sell or transfer.  The appellate court stated as follows:

"In the statutory short form power of attorney, a grant of authority with respect to '[a]ll other property powers and transactions' will not operate to reinvigorate a category which the principal had expressly limited within the same document. [Citation.]  Thus, a catchall provision will not expand a specifically limited power absent clear evidence of the principal's intent that it do so." 
Mabry,
 281 Ill. App. 3d at 84.

While the Short Form in section 3-3 does not include a "catchall" provision on its face, section 3-4 (o) of the Short Form Act, incorporated by reference in paragraph 1 of the Short Form, states as follows:

"(o) All other property powers and transactions. The agent is authorized to: exercise 
all possible powers
 of the principal with respect to all possible types of property and interests in property, except to the extent the principal limits the generality of this category (o) by striking out one or more of categories (a) through (n) or by specifying other limitations in the statutory property power form." (Emphasis added.) 755 ILCS 45/3-4 (West 1998).

This "catchall" provision, which seemingly grants broad powers to the agent, is similar to paragraph 2 of the 1990 power.  Both of these provisions merely grant the agent any additional powers not specifically mentioned that may be necessary to carry out the powers granted in statutory categories (a) through (n).  Accordingly, we find that Paul's use of a "catchall" provision in paragraph 2 of the 1990 power does not indicate a significant departure from the Short Form.   Furthermore, pursuant to 
In re Guardianship of Mabry
, 
281 Ill. App. 3d 76 (1976),  neither of these "catchall" provisions can be interpreted as an expansion of powers expressly limited by section 3-4, which states:

 "[T]he agent will not have power under any of the statutory categories (a) through (o) to *** change any beneficiary whom the principal has designated to take the principal's interests at death under any will, trust, joint tenancy, beneficiary form or contractual arrangement." 755 ILCS 45/3-4 (West 1998).  

The trial court found it significant that the provisions in paragraph 3 of the Short Form were omitted from the 1990 power.  We also find this fact significant, but for different reasons.  Paragraph three in the Short Form states:

"3. In addition to the powers granted above, I grant my agent the following powers (here you may add any other delegable powers including, without limitation, power to make gifts, exercise powers of appointment, 
name or change beneficiaries
 or joint tenants or revoke or amend any trust specifically referred to below):*** ." (Emphasis added.) 755 ILCS 45/3-3 (West 1998).

As noted previously, a principal who does not intend to grant his agent any 
additional
 powers does not need to include a paragraph that would be irrelevant in order to "substantially" follow the Short Form.  In addition, we find that Paul's omission of  paragraph three from the 1990 power evinces an intent by Paul that his agent not be granted any 
additional
 powers, such as the power to 
name or change beneficiaries
.

As the provisions in paragraph 3 of the Short Form are omitted from the 1990 power,

paragraph 3 of the 1990 power contains the exact provision contained in paragraph 4 of the Short Form and provides as follows: 

"3. My agent shall have the right by written instrument to delegate any or all of the foregoing powers involving discretionary decision-making to any person or persons whom my agent may select, but such delegation may be amended or revoked by any agent (including any successor) named by me who is acting under this power of attorney at the time of reference."

Similarly, paragraph 4 of the 1990 power substantially follows paragraph 5 of the Short Form as it states, "[m]y agent shall not be entitled to reasonable compensation for services rendered as agent under this power of attorney." 

The trial court's determination that paragraph 5 of the 1990 power did not follow the Short Form because of how it defines "disability" is erroneous.  Paragraph 5 of the 1990 power provides, in relevant part:

"5. This power of attorney shall become effective only upon my disability or incapacity as hereinafter defined ***.  'Disability or incapacity' shall mean a substantial impairment of my ability to care for my person and/or property by reason of age, illness, infirmity, mental weakness, intemperance, and or addiction to drugs. *** ."   

We do not interpret this paragraph as a significant departure from the Short Form.   Paragraph 6 of the Short Form contains only the following clause: "[t]his power of attorney shall become effective on ***."  The principal is then instructed to "insert a future date or event during your lifetime," without any limitation on how such date or event is defined.    The definitions in section 2-3 of the Durable Power of Attorney Law (755 ILCS 45/2-3 (West 1998)) only define the term "disability" as used by the legislature in the Illinois Power of Attorney Act.  This definition is not binding on the principal's use of the word "disability" when the power expressly adopts a different meaning. 

We also determine that paragraphs 6 through 9 "substantially" follow the Short Form.  In these four paragraphs, the 1990 power: (1) names a successor agent, (2) nominates Susan as guardian of Paul's person and property if a guardian is appointed and (3) states that Paul is fully informed as to the effect of his grant of power.  The 1990 power also includes the notarized acknowledgment at the end in the exact form that the Short Form Act requires in order for a Short Form power of attorney to become effective.

Considering the subject power of attorney in its totality as the law mandates we must, we conclude that the 1990 power is a Short Form entitled to the meaning and effect prescribed in Article III.  Accordingly, Susan Downing was statutorily precluded from changing the beneficiary on Paul Downing's life insurance policies pursuant to section 3-4 of the Short Form Act. 

B. Durable Power of Attorney Law

It should be noted that even were we to assume that the power of attorney executed by Paul Downing in 1990 was a "nonstatutory" property power governed by the Durable Power of Attorney Law, the result we reach would be no different.  Section 2-4 of the Durable Power of Attorney Law provides in part: 

"Applicability. (a) The principal may specify in the agency the event or time when the agency will begin and terminate, the mode of revocation or amendment and the rights, powers, duties, limitations, immunities and other terms applicable to the agent and to all persons dealing with the agent, and 
the provisions of the agency will control notwithstanding this Act
 ***. " (Emphasis added.)  755 ILCS 45/2-4 (West 1998).

Susan argues that if the 1990 power is a durable power, then the "catchall" provision in the second paragraph granted her "broad" powers which are not subject to the limitations inherent in section 3-

4 of the Short Form Act.  Rather, Susan urges that the "catchall" provision granted her full plenary powers, including the right to change beneficiary designations.  Again, we disagree.

As noted, the 1990 power grants enumerated general powers to Susan identical to those listed in the Short Form Act.  Significantly, the first paragraph of the document references "Section 3-4 of the 'Statutory Short Form Power of Attorney for Property Law'" in defining the scope of the powers granted by the agency.  This reference indicates a clear intention of the principal to incorporate the definitions and limitations found in section 3-4 and to make them a part of the agency.  Hence, even as a "durable" or "broad form" power of attorney, the provisions of section 3-4 will be applied as if they were expressly written in the document itself.  See 
Stone v. Department of Employment Security Board of Review,
 151 Ill. 2d 257 (1992); 
Wilson v. Wilson,
 217 Ill. App. 3d 844 (1991).

Section 3-4 (f) of the Short Form Act delineates what powers were conferred to Susan Downing regarding insurance and annuity transactions.  This section states:

"The agent is authorized to: procure, acquire, continue, renew, terminate or otherwise deal with any type of insurance or annuity contract (which terms include, without limitation, life, accident, health, disability, automobile casualty, property or liability insurance); pay premiums or assessments on or surrender and collect all distributions, proceeds or benefits payable under any insurance or annuity contract; and, in general, exercise all powers with respect to insurance and annuity contracts which the principal could if present and under no disability."  755 ILCS 45/3-4(f) (West 1998).

Section 3-4 also includes an express limitation on the exercise of the abovementioned powers as it states, "the agent will not have power under any of the statutory categories (a) through (o) to *** change any beneficiary whom the principal has designated to take the principal's interests at death under any will, trust, joint tenancy, beneficiary form or contractual arrangement." 755 ILCS 45/3-4 (West 1998). 

A written power of attorney must be strictly construed so as to reflect the "clear and obvious intent of the parties." 
Crawford Savings & Loan Assn. v. Dvorak,
 40 Ill. App. 3d 288, 292 (1976), citing
 McHarry v. Bowman,
 274 Ill. App. 487 (1934).  Thus, even if we construe the power of attorney as "durable" under Article II,  we believe the holding in 
In re Guardianship of Mabry
, 281 Ill. App. 3d 76 (1996), would still be applicable.  No matter how the power is characterized, a "catchall" provision will not operate to expand powers expressly limited in other portions of the same instrument.  See Restatement (Second) of Agency §37, Comment
 a
, at 128 (1958) ("[W]here general terms are used which literally purport to grant great authority, such terms will normally be interpreted as authorizing the agent to act only in connection with the business the agent is employed to perform"); see also Restatement (Second) of Agency §34, Comment 
h
, at 122 (1958) ("[When interpreting powers of attorney] all-embracing expressions are discounted or discarded.  Thus, phrases like 'as sufficiently in all respects as we ourselves could do personally in the premises' *** are disregarded as meaningless verbiage").  Accordingly, the 1990 power did not grant Susan the authority to change the beneficiary on Paul's Fort Dearborn life insurance policies.  Therefore, we express no opinion as to whether Paul effectively revoked the 1990 power prior to his death, as our disposition of this matter does not require us to reach the issue.

III. CONCLUSION

For the foregoing reasons, we reverse the ruling of the circuit court of Cook County and remand this case for further proceedings to address the issues raised in counts I and II of Susan Downing's cross-claim.   

Reversed and remanded.

O'MARA FROSSARD, P.J., and GALLAGHER, J., concur.