960 N.E.2d 78 (2011)
355 Ill. Dec. 635
In re the ESTATE OF William Kendall NICHOLLS, Deceased,
Beverly J. Shores, Coexecutor of the Estate of William Kendall Nicholls, Deceased, Petitioner-Appellee,
v.
Walter K. NICHOLLS, Respondent-Appellant, and
United Community Bank, and Illinois Banking Corporation, Respondent.
No. 4-10-0871.
Appellate Court of Illinois, Fourth District.
September 29, 2011.
*79 William T. Panichi (argued), Attorney at Law, Springfield, for Walter K. Nicholls.
David R. Reid (argued), Reid Law Office, LLC, Springfield, for Beverly J. Shores, Coexecutor.

OPINION
Presiding Justice KNECHT delivered the judgment of the court, with opinion.
¶ 1 Following the death of William Kendall Nicholls, petitioner, Beverly J. Shores, coexecutor of his estate, filed a petition for discovery and recovery citation against respondent, Walter K. Nicholls, coexecutor of Nicholls' estate. The action sought to recover funds petitioner asserted belonged to the estate. Respondent changed beneficiaries of certificates of deposit owned by Nicholls to himself upon Nicholls' death under authority purportedly given him by his appointment as power of attorney by Nicholls. Respondent appeals from the trial court's order in favor of petitioner. Respondent argues the trial court erred in (1) applying the Illinois Power of Attorney Act (Act) (755 ILCS 45/1-1 et seq. (West 2004)) so as to limit the scope of the agent's authority pursuant to the subject power of attorney and (2) barring testimony of noninterested witnesses concerning alleged oral communications with decedent regarding authorizing respondent to take the complained-of actions regarding certificates of deposit. We affirm.

¶ 2 I. BACKGROUND
¶ 3 On February 18, 2005, Nicholls executed his last will and testament naming petitioner and respondent, his niece and nephew, as coexecutors. The will provided the assets of Nicholls were to be equally divided between petitioner and respondent. Those assets included several certificates of deposit purchased at State Bank of Auburn (now known as United Community Bank).
¶ 4 On June 17, 2005, respondent drove Nicholls to the office of Nicholls' attorney. On that date, Nicholls signed a document entitled "Durable General Power of Attorney." An employee of the attorney came out to the automobile occupied by Nicholls and respondent and witnessed and signed the document as notary. There was no other witness.
¶ 5 After that date and prior to Nicholls' death, respondent, using his power of attorney, renewed or purchased additional certificates of deposit at United Community *80 Bank (the Bank) and changed the beneficiaries of the certificates of deposit. Specifically, respondent (1) removed the name of petitioner as a beneficiary and made the certificates payable on death to himself or (2) he named the owners as Nicholls "or" himself. All of the funds to acquire the certificates were the property of Nicholls.
¶ 6 On September 8, 2007, Nicholls died. On October 12, 2007, his will was admitted to probate and petitioner and respondent were appointed as coexecutors. Between September 12 and November 30, 2007, respondent presented for payment and redeemed four certificates of deposit in the total amount of $615,291.81.
¶ 7 On November 4, 2009, petitioner filed a petition for discovery and a recovery citation against respondent alleging he improperly changed the beneficiaries on the certificates of deposit. On January 4, 2010, petitioner filed a motion in limine seeking to bar respondent from testifying regarding alleged oral communications with Nicholls concerning his authorization of the actions respondent took with regard to the certificates of deposit. On April 23, 2010, petitioner filed an additional motion in limine seeking to bar employees of the Bank from testifying to the same.
¶ 8 On January 27, 2010, a hearing was held on the petition. Respondent testified he had the power to make the changes to Nicholls' certificates of deposit under his power of attorney, and he contended he made the changes at Nicholls' behest. The trial court did not rule on petitioner's motion in limine in regard to testimony from respondent; but in ruling on objections by petitioner's counsel, the court barred respondent from testifying to any conversations with decedent, Nicholls.
¶ 9 The trial court continued the hearing to March 24, 2010, for a hearing on the motion in limine and an offer of proof by respondent. The court asked for memoranda of law regarding the issue of the scope of the power of attorney and the motion in limine. On March 24, the matter was continued to April 30 for further legal arguments and to May 19 for possible testimony. On April 30, arguments were heard. The issue of both motions in limine was taken under advisement.
¶ 10 On May 17, 2010, the trial judge entered an order via docket entry in which he found, based on "arguments of counsel and submitted case law and evidence in the record," the durable general power of attorney at issue did not allow respondent to name or change beneficiaries of the certificates of deposit. The court found no such authority in the power of attorney in either the general grant clause, the banking powers clause, or the tax power clause.
¶ 11 The trial court also found because there was no ambiguity, no oral evidence would be allowed to be considered. Further, the court found probate law, the parol evidence rule, and relevancy precluded testimony with regard to alleged oral telephonic conversations with Nicholls.
¶ 12 On October 14, 2010, a written order was entered repeating the findings of the May 17 docket entry. In addition, respondent was ordered to segregate half of the amount of the value of the certificates of deposit he transferred or authorized on or after June 17, 2005, purportedly under the power of attorney until the date of Nicholls' death on September 8, 2007. Funds in the amount needed and held in joint tenancy with his wife in an investment account were ordered frozen until after respondent's appeal. Finally, the court stated its order was entered in the administration of an estate and determined the right or status of a party was immediately appealable under Illinois Supreme Court Rule 304(b)(1) (eff.Feb.26, 2010).
¶ 13 This appeal followed.

*81 ¶ 14 II. ANALYSIS
¶ 15 Respondent contends on appeal (1) the trial court did not properly interpret the durable power of attorney and he was authorized by it to take the actions complained of by petitioner, and (2) the trial court erred when it barred testimony of noninterested witnesses concerning oral communication with decedent regarding his authorization for respondent to take the complained-of actions.
¶ 16 A. Authorization To Change Beneficiaries of Certificates of Deposit
¶ 17 When the material facts are not in dispute and the only question is the legal effect of an instrument, the standard of review is de novo. In re Estate of Offerman, 153 Ill.App.3d 299, 302, 106 Ill. Dec. 107, 505 N.E.2d 413, 415 (1987).
¶ 18 The document at issue here is entitled durable power of attorney and dated June 17, 2005. It provides in pertinent part:
"I, WILLIAM KENDALL NICHOLLS, * * * do hereby nominate, constitute, and appoint my attorney, WALTER K. NICHOLLS, my agent and true and lawful attorney-in-fact, to do for me and in my name, place, and stead, and for my use and benefit all such actions which I could do if personally present. * * *
This power of attorney shall be known as an [sic.] Durable General Power of Attorney * * * This durable power of attorney shall include, but not be limited to, the following:
1. General Grant of Power. To exercise, do, or perform any act, right, power, duty or obligation whatsoever that I now have or may acquire, relating to any person, matter, transaction or property, real or personal, tangible or intangible, now owned or hereafter acquired by me, including, without limitation, the following specifically enumerated powers. I grant to my agent full power and authority to do everything necessary in exercising any of the powers herein granted as fully as I might or could do if personally present, with full power of substitution or revocation, hereby ratifying and confirming all that the agent lawfully does or causes to be done by virtue of this durable power of attorney and the powers herein granted.
* * *
(d) Banking Powers. To make, receive and endorse checks and drafts, deposit and withdraw funds, acquire and redeem certificates of deposit, in banks, savings and loan associations and other institutions, execute or release such deeds of trust or other security agreements as may be necessary or proper in the exercise of the rights and powers herein granted; including specifically, but not limited to, accounts wherein a party is a trustee;
* * *
(g) Tax Powers. To prepare, sign and file joint or separate income tax returns or declarations of estimated tax for any year or years; to prepare, sign and file gift tax returns with respect to gifts made by me for any year or years; to authorize and consent to any gift and to utilize any gift-splitting provision or other tax election, to prepare, sign and file any claims for refund of any tax; and to pay any part or all of the tax shown due by any or all of such income and gift tax returns, including any deficiencies, interest, and penalties subsequently determined to be due thereon without reimbursement from the others. To make gifts on my behalf of my property; to disclaim; to exercise all or any of the powers concerning gifting herein granted without the necessity of obtaining *82 the consent or approval of any court so long as the person acting in the capacity of my attorney shall exercise such powers at all times in fiduciary capacity primarily in the interests of the beneficiaries designated in my will, it being the intention of WILLIAM KENDALL NICHOLLS to create this instrument for efficient management and distribution of my property and not to cause transfer tax problems for the agent.
* * *
2. Interpretation. This instrument is to be construed and interpreted as a general durable nonstatutory power of attorney accorded full benefit, interpretation, and protection pursuant to the Illinois Power of Attorney Act, as amended from time to time. The enumeration of specific items, acts, rights, or powers herein is not intended to, nor does it, limit or restrict the general durable powers herein granted to my agent."
¶ 19 The Act (755 ILCS 45/1-1 et seq. (West 2004)) is composed of three articles: article II, the Durable Power of Attorney Law (755 ILCS 45/2-1 et seq. (West 2004)), article III, the Statutory Short Form Power of Attorney for Property Law (Short Form Law) (755 ILCS 45/3-1 et seq. (West 2004)), and article IV, Powers of Attorney for Health Care Law (755 ILCS 45/4-1 et seq. (West 2004)).
¶ 20 Petitioner does not contend the power of attorney at issue in this case is a statutory short form power of attorney under the Short Form Law. The power of attorney here does not comport with the requirements of the Short Form Law. The trial court did not find the power of attorney was a short form power of attorney. Because our review is de novo, we are not bound by either the trial court's findings or petitioner's contentions.
¶ 21 In a case relied upon by petitioner for other matters, Fort Dearborn Life Insurance Co. v. Holcomb, 316 Ill.App.3d 485, 490-99, 249 Ill.Dec. 384, 736 N.E.2d 578, 583-89 (2000), the court went through a detailed explanation of the Short Form Law as applied to powers of attorney not using the template form in all its particulars.
¶ 22 The legislature's purpose in adopting the Short Form Law was stated in section 3-1 (755 ILCS 45/3-1 (West 2004)) where it was noted setting forth optional powers allowed a principal to design a short form to suit his individual needs. Thus, powers of attorney varying somewhat from the Short Form laid out in section 3-3 would still be accorded the meaning and effect accorded in the Short Form Law. Fort Dearborn, 316 Ill.App.3d at 492, 249 Ill.Dec. 384, 736 N.E.2d at 584.
¶ 23 We note many similarities in the provisions of the power of attorney executed by Nicholls and those provided in the Short Form Law. It could be argued, as in Fort Dearborn, the power of attorney here was in substantial compliance with the Short Form Law despite lacking the notice provision and an additional witness besides the notary. Conversely, we also note the language in the section entitled "Interpretation" where it states Nicholls' power of attorney granted to respondent is "to be construed and interpreted as a general durable nonstatutory power of attorney."
¶ 24 However, it does not matter whether the power of attorney at issue is a short form or a durable power of attorney under article II of the Act, the result is the same. The document does not provide respondent the power to change beneficiaries.
¶ 25 Section 2-4 of the Durable Power of Attorney Law provides: "Applicability. (a) The principal may specify in the agency the event or time when the agency *83 will begin and terminate, the mode of revocation or amendment and the rights, powers, duties, limitations, immunities and other terms applicable to the agent and to all persons dealing with the agent, and the provisions of the agency will control * * *." 755 ILCS 45/2-4 (West 2004).
A written power of attorney must be strictly construed so as to reflect the "`clear and obvious intent of the parties.' [Citation.]" Fort Dearborn, 316 Ill.App.3d at 499, 249 Ill.Dec. 384, 736 N.E.2d at 589. We look to the words of the actual power of attorney to see what powers were granted to respondent.
¶ 26 No specific reference is made to changing beneficiaries in the document at issue. Respondent nonetheless contends the general grant of power clause in the document, which stated "The enumeration of specific items, acts, rights, or powers herein is not intended to, nor does it, limit or restrict the general durable power herein granted to my agent" granted him broad and full plenary powers, including the power to change beneficiaries. He argues the banking-powers clause expressly provides him with the power to "acquire and redeem certificates of deposit." He maintains all of his actions taken could be characterized as acquiring and redeeming certificates of deposit. He never changed beneficiaries on certificates of deposit that had not reached maturity. He only redeemed mature certificates of deposit and acquired new ones. The fact he did not include petitioner as an individual who was "payable on death," he argues, does not preclude him from exercising the power he was expressly granted. Respondent agrees with the trial court that nothing in the tax-powers clause provides specific authorization of the power to change beneficiaries.
¶ 27 Respondent is mistaken in contending he was expressly granted the power to change beneficiaries. The general grant of power in the document is insufficient to authorize him to name or change beneficiaries for the certificates of deposit. A "catchall" provision will not operate to expand powers not expressly enumerated. "[W]here general terms are used which literally purport to grant great authority, such terms will normally be interpreted as authorizing the agent to act only in connection with the business the agent is employed to perform." Restatement (Second) of Agency § 37 cmt. a (1958). Further, when interpreting powers of attorney, "all-embracing expressions are discounted or discarded. Thus, phrases like `as sufficiently in all respects as we ourselves could do personally in the premises' * * * are disregarded as meaningless verbiage." Restatement (Second) of Agency § 34 cmt. h (1958). Such broad statements are illusory and have little meaning.
¶ 28 The banking-powers clause of the document did not authorize respondent to change beneficiaries. It authorized respondent to "acquire and redeem certificates of deposit." He claimed to have done so only when a certificate had matured. However, he could take these actions without changing the beneficiaries chosen by Nicholls. That was not all the action he took. Respondent testified he obtained a new certificate when bank personnel pointed out to him a balance over $100,000 in Nicholls' checking account and suggested respondent put some of the money in a certificate of deposit to obtain more interest. When respondent acquired the new certificate, it was payable on death to himself.
¶ 29 If Nicholls wanted to grant respondent the power to change beneficiaries for certificates of deposit, he could have specifically *84 specified this power in the power of attorney he signed, either in the general grant of powers or in the banking-powers clause, thus evidencing his "clear and obvious intent." No such authorization of the power to change beneficiaries appears in the document at issue.
¶ 30 Respondent appears to have engaged in self-dealing, thereby depriving the estate of several hundred thousand dollars and breaching his fiduciary obligation to the deceased. Such conduct raises the presumption of fraud that is not rebutted in the record. In re Estate of DeJarnette, 286 Ill.App.3d 1082, 1088, 222 Ill.Dec. 490, 677 N.E.2d 1024, 1029 (1997).
¶ 31 Respondent's actions upset the estate plan set up by Nicholls. In his will, he provided his real estate should go to petitioner and the rest of his estate, real and personal, should be divided equally between petitioner and respondent. Nicholls never changed this plan. If he had wanted respondent to have a larger share of his estate, he could have changed his will to reflect such a plan.
¶ 32 B. Testimony of Noninterested Parties to Oral Communications With Decedent
¶ 33 Whether a motion in limine should be granted is subject to the discretion of the trial court and will not be reversed on appeal absent a clear showing of an abuse of that discretion. Davis v. Kraff, 405 Ill.App.3d 20, 28, 344 Ill.Dec. 600, 937 N.E.2d 306, 314 (2010).
¶ 34 Petitioner filed a motion in limine to bar the introduction of testimony from employees of the Bank to oral communications respondent alleged they had with Nicholls authorizing the change of beneficiaries of the certificates of deposit. While the trial court did not say it was specifically ruling on petitioner's motion in limine, through its ruling on May 17, 2010, the court granted the motion. The court ruled "testimony with respect to alleged oral telephonic conversations with William K. Nicholls" was precluded by "probate law, parol evidence rule and relevancy." While the court did not technically rule on petitioner's motion in limine, both parties argue on appeal as if it had.
¶ 35 At the hearing held January 27, 2010, respondent himself was barred from testifying to what Nicholls told him, and the trial court indicated it was not likely to allow testimony from anyone else who allegedly had conversations with Nicholls regarding changing the beneficiaries of the certificates of deposit. After discussion between the attorneys for the parties and the court, the court was not persuaded to allow the testimony. A ruling on the motion was continued pending memoranda of law concerning this issue.
¶ 36 Although the record mentions a forthcoming offer of proof to be made by respondent as to what the contested testimony would be, the offer of proof was never made. Failure to make an offer of proof in response to a motion in limine forfeits review of the trial court granting the motion. See People v. Pelo, 404 Ill. App.3d 839, 875, 347 Ill.Dec. 260, 942 N.E.2d 463, 493 (2010); Forreston County Mutual Fire Insurance Co. v. Fleetwood Homes of Wisconsin, 50 Ill.App.3d 966, 968, 8 Ill.Dec. 902, 365 N.E.2d 1364, 1366 (1977). The issue of whether the trial court abused its discretion in barring testimony with regard to alleged oral telephonic conversations with Nicholls has been forfeited by respondent.

¶ 37 III. CONCLUSION
¶ 38 We affirm the trial court's judgment (1) finding the instant power of attorney did not authorize respondent changing beneficiaries on certificates of deposit and *85 (2) barring the testimony of alleged oral communications with decedent and remand for further proceedings.
¶ 39 Affirmed and remanded for further proceedings.
Justices STEIGMANN and COOK concurred in the judgment and opinion.